F. D. HART, JR., *et al. v.* APPALACHIAN WASHED COAL
COMPANY *et al.*

(*Knoxville.* September Term, 1917.)

1. **FIXTURES.** Landlord and tenant. Conditional seller. Right of
removal. Trade fixture.

A company sold machinery to a lessee, retaining title. The ma-
chinery was placed on the leased premises in a sheet iron build-
ing, and on a concrete foundation, to which it was bolted by
nine bolts, imbedded in the concrete, run through prepared
holes and confined by nuts. The machinery could be removed
from the building at an expense of not more than $5, but the
door of the building was too small to pass the machinery. The
removal of two sheets from the side of the building would not
materially impair it, as they could be replaced at a trifling cost.
The lessee made rents and royalties a lien on the leasehold, fix-
tures, and improvements, and the lessor retained a lien on fu-
ture acquired property brought on the premises. *Held,* that if
the machinery was a fixture, it was a "trade fixture," so that the
seller's right to take possession of and remove the machinery
was superior to that of the lessor. (*Post, pp.* 208-210.)

2. **LANDLORD AND TENANT.** Landlord's lien. Subsequently ac-
quired property.

A clause, retaining a lien on future acquired property brought
on the premises, was good as between the lessor and lessee, re-
gardless of whether the property became a fixture. (*Post, pp.*
208-210.)

Cases cited and approved: Cubbins v. Ayres, 72 Tenn., 329; Mc-
David v. Wood, 52 Tenn., 95; Saunders v. Stallings, Id., 65;
McClung v. Carriage & Wagon Co., 117 Tenn., 250; Union Bank
v. Wolf, 114 Tenn., 255.

---

*The question of right, as between landlord and tenant, to re-
move trade fixtures, conditional upon their susceptibility to re-
moval without injury to themselves is discussed in note in 18 L. R.
A. (N. S.), 423.

FROM CLAIBORNE.

Appeal from the Chancery Court of Claiborne County.—Hugh G. Kyle, Chancellor.

Montgomery & Montgomery, for American Ass'n.

J. H. S. Morison, for General Creditors.

John M. Thornburg and N. R. Patterson, for Goodman Mfg. Co.

Mr. Chief Justice Neil delivered the opinion of the Court.

The question for disposition arises on the intervening petition of Goodman Manufacturing Company in a general creditors' proceeding filed in the chancery court of Claiborne county. The facts necessary to raise the points of law to be determined are these:

On the 1st day of May, 1907, the American Association, Incorporated, leased to the Nicholson Coal Company a coal mine in Claiborne county. Section 5 of the lease reads:

"The lessee further covenants and agrees that all rents and royalties herein agreed to be paid shall be deemed and considered as created for the rent of land, and shall be a lien on this leasehold and the fixtures and improvements thereon, and on the personal property of the lessee, and on the coal

mined from and coke made on said premises for twelve months after said rents and royalties fall due, and until the termination of any suit commenced within that time for said rents and royalties."

Section 22:

"The lessee further covenants and agrees at the expiration of this lease to leave and surrender to the lessor the premises herein demised, with the improvements, fixtures, buildings and dwellings thereon, and with all of the mines, entries, openings, tramways, inclines, chutes, tracks, rails, and appurtenances inside and outside of the mines in good working order and condition (but on such termination the working tools and instruments used in mining, machinery, engines, boilers, pumps, ropes, and weighing scales and other personal property placed upon said premises by the lessee shall be and remain the property of lessee, and may be removed by the lessee in case all rents and royalties be paid and agreements of this lease fully complied with): Provided, however, the lessee covenants and agrees that the lessor shall have the right and preference to purchase, at an appraisal of fair market value, all or any of the machinery and other personal property of the lessee above allowed to be removed, should the lessor desire to do so at the expiration or sooner termination of this lease in lieu of allowing removal."

On the 23d of January, 1911, nearly four years after the execution of the lease, the Goodman Manufacturing Company sold to Nicholson Coal Company, which

was the predecessor in title and interest of the Appalachian Washed Coal Company, the machinery involved in the present litigation, consisting of one 16x16 McEwen center crank engine and one 100 K. W. Thompson Ryan Generator, for which the coal company agreed to pay $4,419.34, and there is still a balance due, the amount of which is not contested. At the time the machinery was furnished, there was a contract in writing retaining title until the debt should be paid. The machinery was placed on the leased premises in a sheet iron building, and on a concrete foundation constructed therein, to which it was bolted by nine bolts. It was not embedded in the concrete, but the bolts were so embedded, and they were run through prepared holes, and the machinery was then confined to the bolts by nuts. The evidence shows that it can be removed from the building at an expense of not more than $5; it being necessary only to unscrew the nuts, detach the machinery from the bolts, and remove two sections of the sheet iron wall or siding, the door of the building being too small to pass the machinery. The removal of the two sheets from the side of the building would not materially impair it, as they could be replaced at a trifling cost.

The Goodman Manufacturing Company filed its intervening petition alleging the maturity of the purchase-money debt and the failure to pay, and sought the chancellor's permission to take possession of the machinery and remove it. The lessor filed an answer relying on the lease contract, and claim-

ing its lien by virtue thereof, as prior and superior to the claims of the Goodman Manufacturing Company. The general creditors also filed an answer contesting the right of removal. The evidence shows that at the time these proceedings were begun there was a balance of more than $3,000 due the lessor for unpaid royalties. Pending this litigation the royalties have increased so that they now reach a total of about $14,000. In no event can there be realized out of the property here involved anything for the general creditors; so the question rests wholly between the lessor and the Goodman Manufacturing Company. The chancellor decided in favor of the lessor's contention, and thereupon the Goodman Manufacturing Company appealed to the court of civil appeals. That court reversed the chancellor. The case is now before us for determination.

The question has been much debated as to whether the machinery constituted a fixture, and, if so, whether it could be lawfully removed. On this subject it is sufficient to say that if a fixture at all, it was a trade fixture, and hence, as between lessor and lessee, nothing else appearing, removable by the latter; the rule being very liberal towards the lessee's right of removal when it does not appear that such action is contrary to any prevailing usage or that it would cause any material injury to the estate, and it appearing that the machinery can be detached without losing its essential character or value as a personal chattel.

*Cubbins* v. *Ayres,* 4 Lea (72 Tenn.), 329; *McDavid* v. *Wood,* 5 Heisk. (52 Tenn.), 95, 96; *Saunders* v. *Stallings,* Id., 65, 72. The real question arises on the provision in the lease retaining a lien on all of the personal property that might be subsequently placed on the leased land. The clause forbidding removal of the machinery prior to the payment of the royalties was not intended to confer title on the lessor, but only as a means of securing the enforcement of the lien. The clause retaining a lien on future acquired property brought on the premises was good as between the lessor and lessee, whether becoming fixtures or not. As to whether things attached to the land should be held fixtures would be largely a question of intention. *Cubbins* v. *Ayres,* supra; *McClung* v. *Carriage & Wagon Co.,* 117 Tenn., 250, 96 S. W., 960. But, whatever the intention of the lessor and lessee, it would not bind the interests of a third party selling personal property to the lessee retaining title. The principles that governed in the case of *Union Bank* v. *Wolf,* 114 Tenn., 255, 86 S. W., 310, 108 Am. St. Rep., 903, 4 Ann. Cas., 1070, would not control here. The claimant against the right there asserted in behalf of the conditional vendor was a subsequent mortgagee who was held to be an innocent purchaser, and also protected by the policy of our registration laws. The question presented in the case now before us was reserved in that case. 114 Tenn., 270, 86 S. W., 310, 108 Am. St. Rep., 903, 4 Ann. Cas., 1070. Here the lessor, at best, can stand only in the position of a prior mort-

gagee or lienee, asserting a lien on subsequently acquired property of the mortgagor, or lienor. He could claim only such rights as his lessee acquiured in the subsequently placed property, which, in the present case, was but an equity, unless, indeed, it should appear that the removal of the machinery from its attachment to the land would injure the latter; but this does not appear. The English authorities take a contrary view. But the American authorities overwhelmingly sustain the rule which we have just announced. 1 British Ruling Cases, pp. 678-686, note. The cases are there collected. It does not need extended reasoning to prove that the American rule is fundamentally sound and just. The English rule seems based on a line of cases which appear to us to rest largely on technical grounds. The later cases in that jurisdiction seem to confess that the state of the law there is not satisfactory on this subject, but recognize that only legislation can change it.

We are of opinion there is no error in the decree of the court of civil appeals, and it is therefore affirmed.