McLEAN v. McLEAN STONE CO. et al.

Middle Section.    March 7, 1935.

Petition for Centiorari denied by Supreme Court, July 13, 1935.

M. P. Estes, of Nashville, for appellant Life & Casualty Ins. Co. of Tennessee.

Bass, Berry & Sims and Fyke Farmer, all of Nashville, Leo T. Wolford, of Louisville, Ky., and Poppenhusen, Johnston, Thompson & Cole, of Chicago, Ill., for appellee Fairbanks-Morse Co.

Jos. Martin, of Nashville, for appellee Traylor Engineering & Manufacturing Co.

Edwin E. Carlson, of Nashville, for Ralph E. McLean.

J. G. Stephenson, of Nashville, for McLean Stone Co.

DeWITT, J. In this general creditors' proceeding in which receivers were appointed and the affairs of the McLean Stone Company are being wound up in insolvency, the chancellor sustained the intervening petitions of Fairbanks-Morse Company and Traylor Engineering & Manufacturing Company, as conditional sellers of machinery to the McLean Stone Company, as against the claims of another petitioner, the Life & Casualty Insurance Company of Tennessee, the owner and holder of vendor's lien notes upon the land, that titles to the machinery had not been validly retained, and anyhow the machinery had become part of the realty and was covered by the lien. The insurance company insists upon these claims upon this appeal.

This was an industrial property consisting of about 38 acres of land containing a quarry of valuable stone, almost inexhaustible,

buildings and machinery for quarrying and crushing the stone for commercial purposes. On April 19, 1929, James B. Ezzell and his wife conveyed this land with the improvements then upon it (the machinery here involved not being then upon it or acquired) to Big Harpeth Quarries, Inc., for a consideration of $42,500, of which the purchaser paid $17,500 in cash and gave its five promissory notes for $5,000 each, secured by a lien expressly retained on the land. The deed contained no provision that the lien should apply to after-acquired property. On February 28, 1930, Big Harpeth Quarries, Inc., conveyed this property to McLean Stone Company, which, as a part of the consideration, assumed the payment of the said five notes so secured by vendor's lien. It paid one of these notes, and the lien therefor was released. It also paid $814.24 on another of the notes. On June 18, 1930, the Life & Casualty Company of Tennessee purchased from James B. Ezzell these remaining notes before any of them was due, paying therefor the sum of $19,713.72. Thereafter, certain payments were made by the McLean Stone Company, so that the debt found as of June 20, 1934, the date of the chancellor's decree, was $22,960.27, for which he awarded a recovery and declared it a lien only upon the land and buildings and other improvements thereon not including the machinery here involved; the liens or titles of Fairbanks-Morse Company and Traylor Engineering & Manufacturing Company, under their conditional sales contracts, being held to be superior to the lien of said purchase-money notes.

Before the notes were purchased by the insurance company on June 18, 1930, the property was inspected and appraised by two of its officers. Their report in writing to the company was as follows:

"Report of Appraisers.

"The undersigned hereby certify that we have personally inspected the property of the McLean Stone Company, consisting of between thirty-eight and thirty-nine acres in the Ninth Civil District, Davidson County, Tennessee, near Newsom Station, and value the ground at $42,500, and improvements at $15,000 when completed, total $————. This ———— day of June, 1930.

"(Signed) Edward Everett Young
"Guilford Dudley."

It is admitted in the testimony of Mr. Dudley that the word "improvements" meant buildings, some of which were in course of erection; but he also testified that the machinery there at that time was deteriorated; that he put the value as that of a going rock quarry; that it was represented to him that all the machinery necessary had been bought and would be there in a few weeks; that the notes would not have been bought if no machinery had been there or coming. There is no evidence that the representation was

made by any one in behalf of the appellees. Mr. Dudley said that Mr. Ezzell, the holder of the notes, told him that the machinery was all bought and partly paid for; that he did not remember what machinery he saw; that they showed him "something out there on the side-tracks."

Concerning the purchase, installation, and situation of the machinery sold by the appellees to the McLean Stone Company, the chancellor made a very full finding of facts, in which we fully concur, and which, in substance, is as follows:

Both contracts were in writing, signed by the parties, but not registered. Both contracts provided retention of title in the sellers until payment in full should be made in cash; that of Fairbanks-Morse Company specifying that the machinery and materials sold by it should be and remain strictly personal property and retain its character as such, no matter whether on permanent foundation or in what manner affixed or attached to any building or structure, or what may be the consequences of its being disturbed on such foundation, building or structure, or for what purpose the machinery or materials may be used; that of Traylor Engineering & Manufacturing Company specifying that title was retained by it whatever may be the mode of attachment of the machinery and equipment to realty or otherwise.

All of it was sold for installation and use on the land herein involved. Most of the machinery and equipment sold by Fairbanks-Morse Company was manufactured subsequent to the execution of its contract, which is in the form of a proposal signed by the seller on March 10, 1930, and accepted in writing by the McLean Stone Company on March 11, 1930. It was finally approved in writing by Fairbanks-Morse Company by its manager on April 11, 1930.

All of the machinery and equipment sold by Traylor Engineering & Manufacturing Company was manufactured by it after the execution of its contract, which is in the form of a proposal signed by the seller and accepted in writing by the McLean Stone Company on March 11, 1930. It was finally approved in writing on March 18, 1930, by said company by its vice-president and treasurer.

Each of said contracts was fulfilled by the seller; all of the property thus sold being delivered and installed in the buildings and plant of the McLean Stone Company on the said land.

At the time the Life & Casualty Insurance Company of Tennessee purchased the vendor's lien notes from James B. Ezzell, McLean Stone Company had begun the erection of its rock-crushing plant on said land, but the same had not been completed, and although the machinery, materials, and equipment furnished by Fairbanks-Morse Company had already been shipped, and a greater part of same, if not all, had been delivered on the premises, the installation of it had not been completed, and it was not completed until

August 1, 1930. None of the machinery and equipment furnished by Traylor Engineering & Manufacturing Company had been delivered on the premises when the purchase of the vendor's lien notes was made.

At the time of the appraisal by the officers of the insurance company they knew that the machinery to be installed in said plant was not fully paid for, but they made no inquiry for the purpose of ascertaining whether or not title thereto would be retained by the sellers; and the insurance company did not rely upon any of the machinery, equipment, and materials furnished or to be furnished by the sellers as being part of the realty or as being part of the security for said vendor's lien notes, but, on the other hand, relied entirely upon the land and buildings as security for said notes.

While it was intended that this machinery and equipment should remain indefinitely on the land as a part of the rock-crushing plant, the plant could be dismantled and this equipment could be moved elsewhere at a minimum cost without harm to the land or buildings. It was carried on the books of the McLean Stone Company as personal property, separate from the real estate. At one time the McLean Stone Company considered the matter of removal of it to East St. Louis, Ill. It therefore cannot be concluded that the intention was to make it a permanent part of the realty.

The chancellor did not err in excluding testimony of Mr. Dudley as to his understanding with Mr. Ezzell that the property was being equipped as a rock-crushing plant. This was immaterial, for Mr. Ezzell was not representing any of the parties herein involved. Nor did the chancellor err in excluding testimony of Mr. Dudley that the insurance company would not have bought the notes if it had known that the rock-crushing machinery would be removed; and that no one told him that the machinery herein involved was not paid for. In the absence of any evidence of inquiry made as to the terms of sale of the machinery, this evidence would have no determinative quality whatever.

The appellant's contention that this machinery and equipment should be treated as part of the real estate and as covered by the vendor's lien contains certain component propositions which will be stated and disposed of.

1. It is insisted that these are not valid contracts of conditional sale, because (a) they were sales of articles to be manufactured and later delivered; (b) they were mere proposals; (c) the contracts were not fully executed at the time of the purported sales; (d) the descriptions of the articles are insufficient for validity under the laws of Tennessee.

It does not affect the validity of a conditional sales contract that the goods are to be manufactured and later delivered. Why should not parties be allowed to make such a contract? What

principle of law or of public policy does it offend? A contrary rule would operate as a heavy impediment to legitimate business. Our statutes do not forbid such a contract nor have our courts held it inoperative. It does not conflict with Code, section 7286, which merely forbids the making of such contracts by parol and does not alter in any wise the essential nature of the contract. Star Clothing Mfg. Co. v. Nordeman, 118 Tenn., 384, 100 S. W., 93. It is not required that the goods be ready for delivery or be delivered immediately upon the execution of the contract in writing. As the machinery here involved was to be manufactured, the contracts were at first executory contracts of sale upon condition, but they ripened into executed contracts upon condition of retention of title when the machinery was manufactured and delivered; and therefore the retention of title was lawful under Code, section 7213, subsection 1, which is as follows:

"Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer."

In Sherer-Gillett Co. v. Long, 318 Ill., 432, 149 N. E., 225, this section was held to validate conditional sales as against third persons even in a jurisdiction wherein such sales were not theretofore recognized.

In Savage & Co. v. Mayfield, 157 Tenn., 676, 11 S. W. (2d), 855, the machinery sold under a retention of title contract was thereafter to be manufactured. As affecting the validity of the contract this was not dealt with in the decision. It must not have been regarded by the court or by counsel as of importance.

The descriptions of the materials, machinery, and equipment set forth in the contracts in question are as complete as the nature of them would admit. They are described with particularity as to character and capacity, as for instances, "One 6 cylinder H. P. stationary Diesel Engine with equipment and fittings," "1-16 inch type T. Traylor Heavy Duty Bulldog Gyratory Crusher equipped with Chilled Mayari Iron Head and concaves, 50-25698."

It is deemed unnecessary to encumber this opinion with the long lists contained in the contracts. All of this personal property was sold expressly for installation, and was installed, on the land and has not been removed. This was an important element in the description. The presence of the personalty at the place designated, together with the descriptions thereof in kind, makes easy the ascertainment of the property meant to be designated. Stoll v.

Schneider, 158 Tenn., 341, 13 S. W. (2d), 325; In re Robinson-Mc-Gill Mfg. Co., 70 F. (2d), 100; Wittler-Corbin Machinery Co. v. Martin, 47 Wash., 123, 91 P., 629.

It is immaterial that certain serial numbers of machinery thus sold by the Traylor Engineering & Manufacturing Company were not inserted in the descriptions in the copy of its contract retained by McLean Stone Company; and Elliotte v. National Cash Register Co. (C. C. A.), 16 F. (2d), 464 (applying the Tennessee statute), is relied on as it holds that where the serial number of a machine sold was inserted by the seller in the written order and note after they were executed by the purchaser, there was no valid retention of title. But it appears that the serial numbers were placed on the duplicate of the contract by that company prior to March 18, 1930, when it became effective and binding.

Neither the purchaser, McLean Stone Company, or its receivers, have questioned the sufficiency of these descriptions. If the insurance company has no lien on this machinery, it cannot object to the descriptions, as they appear to be ample and sufficient as between the parties to the contract. International Harvester Co. v. Poduska, 211 Iowa, 892, 232 N. W., 67, 71 A. L. R., 973.

2. The appellant contends that although it is a prior lienor, it must hold the machinery as security under its lien, because (a) the removal of it will impair the security for its notes; (b) the machinery is a necessary part of a complete rock crushing plant as fixtures; (c) it purchased the notes after the contracts were made, without notice of them, and therefore it has superior rights as an innocent purchaser.

A statement of principles will serve as a guide to correct differentiation among reported cases. The presence or absence of certain elements will operate to make more clear the equities which must be observed and applied.

It appearing that the removal of the property would not cause injury to the freehold, the test at last is whether or not it would impair the security which the lienor had in contemplation when the debt was created or even when the notes were purchased; and whether or not the lienor was misled or had advanced anything on faith of the annexation. 26 C. J., 684, quoted with approval in Lenoir Land Co. v. Haynes Heating Co., 166 Tenn., 494, 63 S. W. (2d), 659.

A vital distinction is generally made between holders of liens created before and holders of those created after the installation of fixtures (especially trade fixtures, see Hart v. Appalachian Washed Coal Co., 139 Tenn., 204, 201 S. W., 515) under chattel mortgages or conditional sales contracts. As to such contracts prior encumbrancers are regarded as having relied on the security as it existed when they became the holders of their liens, in the absence

of any provisions that their liens should cover after-acquired property, and in the absence of injury to the freehold upon removal. This is an exception to the rule that ordinarily permanent additions to the property constitute a part of the realty and as to subsequent lienors or innocent purchasers they cannot be removed. Lenoir Land Co. v. Haynes Heating Co., supra; Knoxville Gas Co. v. Kirby & Sons, 161 Tenn., 490, 32 S. W. (2d), 1054; Bank & Trust Co. v. Wolf Co., 114 Tenn., 255, 86 S. W., 310, and Savage & Co. v. Mayfield, 157 Tenn., 676, 11 S. W. (2d), 855, involved the rights of lienors under provisions that their liens should cover after-acquired property. In the Wolf Case the mortgagee claiming the fixtures as security was a subsequent encumbrancer having no knowledge of the previous retention of title contract and relying on the machinery sold thereunder as part of his security. In Hart v. Appalachian Washed Coal Co., 139 Tenn., 204, 201 S. W., 515, it was pointed out that the principles that governed the Wolf Case would not control a controversy between a landlord and a conditional seller of machinery to the lessee under a lease creating a lien for rent on the personal property of the lessee; and it was said that whatever the intention of the lessor and lessee, it would not bind the interests of a third party selling personal property to the lessee and retaining title. The reason for such rule is that, as the lien is merely security, the lienor has advanced nothing in reliance on the value of the subsequently-acquired chattels, and he should not be permitted to acquire them as a part of his security, contrary to the intention of the party making the annexation, and to the injury of the seller. In other jurisdictions there are innumerable decisions upon this subject. See 26 C. J., 684; annotations, 13 A. L. R., pages 448 et seq.; 73 A. L. R., 748 et seq.; 88 A. L. R., 1318 et seq.; 11 R. C. L., 1064. There is some conflict in these decisions, but we have only to apply properly to the facts of the instant case the principles which have been adopted and applied in analogous cases in Tennessee.

The appellant is a prior lienor. It does not claim under any provision in the deed that property afterward acquired became part of the security for the lien. Its contention that it relied on having the property furnished by the appellees as part of its security is overcome by the fact, as shown clearly by the report of its appraisers, that the land and buildings as they stood, without the property furnished by the appellees, were worth $57,500, and that this was the basis of the investment. The appellant therefore cannot succeed upon the ground that it is an innocent purchaser, although it had no actual knowledge of the terms of the contracts of conditional sale. Of course, it had no constructive knowledge, for in this state contracts of conditional sale are not required to be registered.

In view of these principles as applicable to the facts of this case,

the contention based upon necessity of the machinery for a complete rock-crushing plant is not sustainable. This proposition is not complicated with any likelihood of injury to the freehold by removal; nor with reliance by the appellant upon the machinery as security when it purchased the lien notes. Mr. Dudley testified that the land without this machinery would be worth ''probably something about a thousand dollars.'' We cannot understand such a statement in view of his appraisal; but making great allowance for depreciation due to industrial depression, we cannot conclude that the original security has been so largely depreciated. However, the appellant must be confined to it so far as this machinery is concerned.

In Detroit Steel Co. v. Sistersville Brewing Co., 233 U. S., 712, 34 S. Ct., 753, 58 L. Ed., 1166, it was said upon such a proposition:

''This class of need to use property belonging to another is not yet recognized by the law as a sufficient ground for authority to appropriate it.''

In Woodliff v. Citizens' Building & Realty Co., 240 Mich., 413, 215 N. W., 343, it was held, upon the same principle, that the fact that an elevator sold under retention of title was essential to the use of an apartment house would not give to a prior lienor the right to appropriate it.

In Campbell v. Roddy, 44 N. J. Eq., 244, 14 A., 279, 283, 6 Am. St. Rep., 889, it was said:

''It is difficult to perceive any equitable ground upon which the property of another which the mortgagor annexes to the mortgaged premises should inure to the benefit of a prior mortgagee of the realty. The real-estate mortgagee had no assurance, at the time he took his mortgage, that there would be any accession to the mortgaged property. He may have believed that there would be such an accession; but he obtained no rights, by the terms of his mortgage, to a lien upon anything but the property as it was conditioned at the time of its execution. . . . So long, therefore, as he is secured the full amount of the indemnity which he had taken, he has no ground for complaint. There is, therefore, no inequity towards the prior real-estate mortgagee, and there is equity towards the mortgagee of the chattels, in protecting the lien of the latter to the full extent, so far as it will not diminish the security of the former.''

The question involves merely the practical application of equitable principles to the diverse interests.

It results that all of the assignments of error are overruled, and the decree of the chancery court is affirmed, with costs of the appeal adjudged against the appellant and the surety on its appeal bond. The cause will be remanded for proceedings necessary to the enforcement of the decree.