**GREAT AMERICAN HEALTH AND LIFE INSURANCE COMPANY, Appellant,**

v.

**R. L. LOTHRINGER, Appellee.**

No. 353.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 14, 1967.

Rehearing Denied Jan. 11, 1968.

Michael W. Wagner, San Antonio, for appellant.

Reese D. Wade, of Wade, Wade & Newton, Beeville, for appellee.

OPINION

GREEN, Chief Justice.

Appellee R. L. Lothringer brought suit in the district court of Bee County against Great American Health and Life Insuranc Company and Texas Reserve Life Insurance Company on an accident policy issued by appellant Great American to his

wife, alleging injuries and disabilities to her resulting from a fall in the State Bank and Trust Company of Beeville on April 2, 1959. The pleadings and evidence disclose only one alleged cause of action on the policy, and appellee stipulated in open court that defendant Texas Reserve was joined because it had succeeded to the rights of Great American. After a trial before the court without a jury, judgment was rendered for plaintiff-appellee against both defendants jointly and severally for $6,-000.00. This appeal by Great American is from such judgment. There are no findings of facts or conclusions of law.

This was the second trial of this cause. A former judgment for appellee was reversed and remanded by the 10th Court of Civil Appeals. Texas Reserve Life Insurance Company et al. v. R. L. Lothringer, Tex.Civ.App., 394 S.W.2d 660, n. w. h.

The provisions of the policy relied on by plaintiff insured against "(1) loss or disability resulting solely from bodily injury effected directly and independently of all other causes through accidental means and sustained during the term of this policy" and provided further that "If such injury shall, within thirty days from date of accident and independently of all other causes, totally and continuously disable and prevent the Insured from performing each and every duty pertaining to any occupation, and shall require the personal care and regular attendance of a legally qualified physician or surgeon, other than the Insured, the Company will pay, beginning after the third day of such disability, indemnity at the rate of $100.00 per month, and continuing as long as the Insured remains so disabled, not to exceed seventy-five consecutive months for any one period of disability."

It was stipulated that insured's loss or disability was sustained during the term of the policy, and while it was in effect.

Appellant bases his appeal on six points of error, the first three being to the effect that the trial court erred in rendering judgment for appellee in that appellee failed to prove (1) that the alleged injury was independent of all other causes; (2) that insured was totally and continuously disabled and prevented from performing each and every duty pertaining to any occupation; (3) that the injury required the personal care and regular attendance of a legally qualified physician or surgeon. Point 4 is that there was no evidence of probative value to support the judgment. Appellant's 5th point alleged error in the court's permitting a certain hypothetical question to be propounded over appellant's objection, and its 6th point concerned the court's overruling appellant's motions for continuance.

Plaintiff alleged in his trial pleading (third amended petition filed March 24, 1967), paragraph III, as follows:

"III.

"Plaintiff shows to the Court that on or about the 2nd day of April, 1959, his wife, while working for Chester Cavasar's Used Autos and Auto Parts, at the occupation of bookkeeper and office clerk, the duties of which were keeping books, taking care of cash, making collections, taking papers to the Courthouse and typing correspondence, and while engaged in carrying a deposit for the said Cavasar to the State Bank and Trust Company at Beeville, Texas, entered the lobby of said Bank and slipped and fell on the hard tile floor, landing on her right knee, and, as a result thereof, the said Maymie L. Lothringer suffered total and permanent disability to perform the duties of her occupation, which disability continued from the date of said accident down to the present time, and that by reason of her disability and by reason of the policy of insurance, above mentioned, the Defendants promised to pay Plaintiff the sum of $100.00 per month for 75 months of said disability by reason of the provisions of said contract of insurance."

A copy of the policy was attached to the pleading, and the pertinent provisions were specifically plead.

The first four points raised by appellant being no evidence points, we shall summarize the testimony to determine if there was evidence to support the implied findings of the court as to each of these points, under the legal principles set forth in Garza v. Alviar, Tex.Sup.Ct., 395 S.W.2d 821.

Appellee's evidence consisted of the policy and the testimony of Mrs. Lothringer and portions of the written depositions of Dr. Sol Foreman. Defendant placed in evidence the written deposition of Dr. William H. Ainsworth.

According to Mrs. Lothringer's testimony, at the time of the accident in 1959 she was in her late fifties, and was a rather heavy person. She had been a beauty operator, a saleslady, and since January, 1955, bookkeeper and office clerk for Chester's Auto Parts. In performing her business duties, it was necessary for her to stand on her feet a considerable portion of the time, and to go out on various errands during the day. She was able to do all of this, and to perform her other duties, and had never had any trouble with either of her knees prior to the accident of April 2, 1959. On that day, while in the bank to make a deposit for her employer, her feet slipped out from under her, and she fell on the right side of her right knee with her leg twisted under her. She was helped up and was able to complete her day's work and the next day but her leg became so swollen from about the middle of her thigh to about 8 inches below her kneecap and so painful that on Monday, three days after the accident, she went to Galveston to get medical attention. There she was hospitalized for 25 days under the care of Dr. Foreman, who called in Dr. Ainsworth for consultation and treatment. After being released from the hospital she returned to Beeville, and thereafter returned to Galveston for treatment by Dr. Foreman about five times, the last visit being September 14, 1959. She was treated for her knee by Dr. George Barnes on November 11, 1960. So far as shown by the record,

she has not had any medical attention since that date.

Mrs. Lothringer testified that her right knee has continuously given her severe trouble and pain from the time of the accident to the date of trial (March, 1967). When she returned from the hospital she attempted to go back to work at her old position, but due to the swelling and pain in her leg she was unable to perform any of the duties required without severe suffering. She could not sit at her desk or stand for any extended period of time, could not get in or out of an automobile; she would have cramps from depending so much on one leg, and her back was giving her trouble so that she could not do any form of work for any period of time. According to her testimony, her pain and suffering and physical condition continues to get worse, right up to the time of trial.

In addition, plaintiff placed in evidence portions of the deposition of Dr. Foreman, taken in June, 1962, on written interrogatories. Since the disposition of appellant's first point depends in our judgment on the legal effect to be given this evidence of appellee's doctor and witness, and the other expert medical evidence, we quote it in full as follows:

Interrogatories and answers

"DIRECT INTERROGATORY NO. 11:

Please give your diagnosis of Mrs. Lothringer's condition?

ANSWER TO DIRECT INTERROGATORY NO. 11:

My diagnosis of her was traumatic sprain and probable bursitis of the patella involving the right knee and osteoarthritis involving the knee.

\*    \*    \*    \*    \*    \*

DIRECT INTERROGATORY NO. 12:

Please attend the propounding of the following hypothetical question: please assume that Mrs. Lothringer on April 2, 1959, did slip on the hard surface floor

of the State Bank and Trust Company of Beeville, and while trying to catch herself did land on her right knee and hand, following which she felt pain in her right knee and has continuously to date suffered discomfort in her right knee. Also, please take into consideration the knowledge and information which you have concerning Mrs. Lothringer's condition from your observation and treatment of her as set out in response to the above questions, and considering these matters please give us your medical attention with respect to the following questions, to-wit:

(a) State whether or not in your opinion the condition found by you and stated in response to the above interrogatories were in real medical certainty caused by the fall suffered by Mrs. Lothringer on April 2, 1959?

ANSWER TO (a): Yes

\*　　\*　　\*　　\*　　\*　　\*

(b) State whether or not in your opinion Mrs. Lothringer will in reasonable medical probabilities suffer an impairment permanently as a result of the injury sustained on April 2, 1959?

ANSWER TO (b):

I must state that the permanent portion of this would be from an aggravation of a pre-existing osteo-arthritis involving the patella, the femur, and the tibia.

DIRECT INTERROGATORY NO. 19:

As of the last date of your familiarity with the health of Mrs. Mamie Lothringer please state the facts with reference to her impairment, if any, in the following respects:

(d) To do prolonged walking?

ANSWER TO (d):

With reference to prolonged walking to last time I saw her she was extremely scared to do considerable walking and was having to walk by holding her knee stiff for fear of its locking and causing her to fall.

(e) To do moderate walking?

ANSWER TO (e):

The same answer with reference to moderate walking.

(f) To stand for long periods compared to or as distinguished from moderate standing?

ANSWER TO (f):

This too was also restricted in amount.

(g) To do extensive or moderate kneeling?

ANSWER TO (g):

The last time I saw her she was avoiding kneeling altogether.

\*　　\*　　\*　　\*　　\*　　\*

CROSS INTERROGATORY NO. 7:

Have you previously examined or treated or examined and treated Mrs. Lothringer for any condition of her right knee; if so, please detail and specify the conditions for which you have examined her and the result of your examination and observation and your diagnosis of her condition of the right knee?

ANSWER TO CROSS INTERROGATORY NO. 7:

At no time in the past have I treated her for any condition involving her knee prior to the hospitalization that I have already summarized in April, 1959.

I saw her and treated her in April 1959, following an accidental fall in which she injured her right knee. I treated her for an acute strain and aggravation of arthritis involving the right knee, involving the patella, tibia and femur and what I considered a traumatic bursitis resulting from same.

* * * * * *

CROSS INTERROGATORY NO. 22:

What is the condition of Mrs. Lothringer's knee as of the last date on which you saw her and state the last date on which you saw her?

ANSWER TO CROSS INTERROGATORY NO. 22:

On the 14th of September, 1959, at which time she complained to me that the knee still hurt and she felt it to be still unstable at which time she stated that she was walking with her knee rigid in order to avoid any falls. I do not believe that Dr. Ainsworth instructed her to do this. As I recall she was also on these occasions going to see Dr. Ainsworth for follow-up.

* * * * * *

CROSS INTERROGATORY NO. 23:

Is it not possible that the condition of her knee will return to normal in the future?

ANSWER TO CROSS INTERROGATORY NO. 23:

This is possible but the osteo-arthritis involving the knee is an irreversible process which took many years to develope and when aggravated with a fall such as she had might be a source of further disability, depending on any abuse that she may render the knee or accidental falls or injuries.

* * * * * *

CROSS INTERROGATORY NO. 24:

With reference to the hospitalization of Mrs. Lothringer from April 15 to May 10, 1959, state the following:

(a) What was the purpose for the hospitalization of Mrs. Lothringer?

ANSWER TO (a):

She was hospitalized for treatment of her injury since it was very difficult for her to come and go to the doctor's office.

* * * * * *

(f) Did Mrs. Lothringer require hospitalization because of her chest, thoracic spine, gall bladder, or G.I. series or any one or more and combination of same?

ANSWER TO (f):

No, these were not the reasons for which I admitted her to the hospital in 1959.

* * * * * *

CROSS INTERROGATORY NO. 22:

What is the condition of Mrs. Lothringer's knee as of the last date on which you saw her and state the last date on which you saw her?

* * * * * *

ANSWER TO CROSS INTERROGATORY NO. 22:

The last date on which I saw her was September 1959. She still complained of soreness in her knee and complained that she was walking stiffly in order to avoid falling or injuring herself."

After the reversal of the first judgment, Texas Reserve Life Insurance Company et al. v. R. L. Lothringer, Tex.Civ.App., 394 S.W.2d 660, Dr. Foreman again made answers to written interrogatories and stated that in his opinion as a physician, Mrs. Lothringer had reached her maximum recovery from the injury involved herein on September 14, 1959, and that any further care or regular attendance by a physician upon her for her injury and disability would have been useless. This second deposition was also in evidence.

Dr. William H. Ainsworth, whose written deposition taken in June, 1962, was placed in evidence by defendant, testified that he was an orthopedic surgeon; that in April, 1959, he was called upon by Dr. Foreman to see Mrs. Lothringer as a patient in John Sealy Hospital in Galveston; that he saw her daily during her stay there. His diagnosis was that she was suffering from sprain and contusion of the right

knee which he related to a fall on April 2, 1959, with pre-existing hypertrophic osteoarthritis of that knee. He further testified that she was suffering primarily from the pre-existing arthritic change in the knee, with emotional instability as a factor in prolonging her convalescence; that hypertrophic osteoarthritis is usually thought to be a degenerative condition and not actually caused by injury; that it is the change seen frequently in the joints as a result of wear and tear or degeneration and is associated frequently with aging.

We shall first consider appellant's Point of Error No. 1, to the effect that the appellee failed to prove that the alleged injury was independent of all other causes. The statement and argument of appellant under this point clearly reflects that appellant was referring to the legal requirements of proof under the provision of the policy which insured against loss or disability resulting from bodily injury effected directly and independently of all other causes through accidental means. The logical meaning of the policy terms limits the coverage to accidental bodily injuries which are the *sole* proximate cause of the disability, not merely a concurring cause, and the burden was on the plaintiff to establish by a preponderance of the evidence that her disability resulted solely from accidental means independent of all other causes. Mutual Benefit Health & Accident Association v. Hudman, Tex.Sup. Ct., 398 S.W.2d 110, and authorities cited; Continental Cas. Co. v. Fountain, Tex.Civ. App., 257 S.W.2d 338, wr. ref.; Combined American Insurance Company v. Jordan, Tex.Civ.App., 403 S.W.2d 811, wr. ref. n. r. e.

In Hudman, supra, the question before the Supreme Court was whether the beneficiary of an accident policy which limited recovery to death from accidental injury "independently of other causes" may recover under the policy when the insured's death resulted from the combined effects of the injury and a pre-existing disease.

Plaintiff obtained a judgment in the trial court, where the case was tried before the court without a jury. The Court of Civil Appeals affirmed, Mutual Benefit Health and Accident Association v. Hudman, 385 S.W.2d 509. The Supreme Court reversed and rendered judgment that the beneficiary take nothing. That Court summarizes the testimony of the three doctors who testified, one as a plaintiff's witness and two as defense witnesses, and found that their evidence was in agreement that death resulted from fibrillation of deceased's heart, and that such fibrillation was shown by the evidence to have been caused concurrently by deceased's overexertion (the accidental injury) and his diseased heart. The court stated:

"All of the evidence shows that two causes proximately concurred to produce death and the policy limited its coverage to one cause, accidental bodily injury. * * * It took both causes to produce death and but for both, death would probably not have occurred. We conclude that by definition of the policy terms and by logic, the policy coverage was limited to accidental bodily injuries which must be the sole cause of death."

The opinion quotes with approval from 1A Appleman, Insurance Law and Practice, § 403:

"As a general rule, it has been stated that if there is a pre-existing disorder or illness at the time an injury is received, recovery may still be had if the injury was severe enough to have caused the entire damage or considerable damage, but not if the disease was the proximate cause or principal cause thereof. From this, it has been held that where a disease condition aggravates the result of the injury or is, itself, aggravated thereby, there can be no recovery, where the combined result is to cause the death or disability. This has been particularly supported where the death or disability would not have resulted from the external injury alone, but, with the com-

bination of injury and disease, the loss is produced. \* \* \* "

When the testimony of the two medical witnesses is examined in the light most favorable to appellee, we find that they agree that though the injuries to insured were related to and a result of her fall on April 2, 1959, her disability was caused by a combination of her external injuries and the pre-existing hypertrophic osteoarthritis in her right knee. Insured's testimony summarized above did not conflict with or contradict the evidence of the medical experts. She stated that she was in good health and had never had any trouble with her right knee or leg before the accident; but in Hudman, supra, as shown in Justice Pope's opinion, p. 111, there was evidence that prior to his death deceased was in apparent good health and had never had a diagnosis of or treatment for heart trouble.

We conclude from all of the evidence as a matter of law that Mrs. Lothringer's disability was not solely caused by accidental means independent of all other causes; that two causes, the accident and her osteoarthritis, concurred to cause her disability. The pre-existing arthritic condition or disorder testified to by the medical experts was not so remote in the scale of causation, or so dormant and insubstantial, or so temporary and transient, that it did not materially contribute to the injury or her incapacity. Hudman, supra, p. 114. We hold that Mrs. Lothringer's disability was not covered by the policy in evidence, and sustain appellant's first point of error. This would apply as to the fourth point, also.

For the reasons stated in (2–3) of the opinion in the former appeal of this case, supra, appellant's second point is overruled. Appellee, by the second deposition of Dr. Foreman, met the deficiency in the evidence for which the first judgment was reversed and remanded, and its third point is overruled. We have given due consideration to its fifth and sixth points, and find no merit in them. They are overruled.

Plaintiff's pleadings alleged only one cause of action on the policy in evidence, but included Texas Reserve Life Insurance Company as a defendant along with appellant, for the admitted reason, as stated by appellee's counsel at the commencement of the trial and on oral argument before this Court that he believed Texas Reserve has succeeded to the rights of Great American. Judgment was rendered jointly and severally against both insurance companies. Texas Reserve did not join in the appeal.

As this court stated in Curtis v. Carey, Tex.Civ.App., 393 S.W.2d 185, 191

"It is the general rule that where one party appeals from a judgment, a reversal as to him will not justify a reversal against the other non-appealing parties. This rule, however, does not apply in cases where the respective rights of the appealing and non-appealing parties are so interwoven or dependent on each other as to require a reversal of the whole judgment where a part thereof is reversed. Lockhart v. A. W. Snyder & Co., 139 Tex. 411, 163 S.W.2d 385, 392; American Indemnity Co. v. Martin, 126 Tex. 73, 84 S.W.2d 697; Appellate Procedure in Texas, Sec. 18.13."

In view of our holding herein, it is necessary that the judgment of the trial court against appellant Great American Health & Life Insurance Co. be reversed, and judgment here rendered that appellee take nothing against it. This is a proper case to apply the rule above copied from Curtis v. Carey. The judgment against the non-appealing defendant is also reversed and rendered.

Reversed and rendered.