**MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, Appellant,**

v.

**Isabel RATLIFF, Appellee.**

No. 4289.

Court of Civil Appeals of Texas.

Eastland.

April 4, 1969.

Rehearing Denied April 25, 1969.

Schulz & Hanna, Malcolm C. Schulz, Abilene, for appellant.

Dell Barber, Colorado City, for appellee.

WALTER, Justice.

In a non-jury trial Mrs. Isabel Ratliff recovered a judgment for accidental death benefits against Mutual Benefit Health & Accident Association on an accident policy issued to her husband, Robert Harry Ratliff, Sr., in 1937. The Company has appealed.

The policy provides:

"Mutual Benefit Health & Accident Association, Omaha, (Herein called Association) does hereby insure Robert Harry Ratliff (herein called the Insured) of the City of Colorado, State of Texas, against loss of life, limb, sight or time, resulting directly and independently of all other causes, from bodily injuries sustained during any term of this policy through purely accidental means—"

"ACCIDENT INDEMNITIES"
Specific Losses

Part A.

If the insured shall sustain bodily injuries as described in the Insuring Clause, which injuries shall independently and exclusively of disease and all other causes, continuously and wholly disable the Insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the Association will pay: FOR LOSS OF LIFE.........$5,000.00."

Appellant contends there is no evidence and insufficient evidence to prove that Mr. Ratliff's death resulted directly and independently of all other causes from bodily injuries sustained through purely accidental means. It also contends there is no evidence to prove that Mr. Ratliff received an injury through purely accidental means.

The evidence shows that Mr. Ratliff was 68 years of age at the time of his death and had practiced law in Colorado City for approximately 45 years. On February 17, 1967, Mr. Ratliff, accompanied by one of his sons and grandson, traveled to a ranch near Cuthbert in search of a bee cave near the river. He stepped into a hole and fractured both bones of a leg. About four hours after the accident, he arrived at the hospital and was seen by his doctor who testified Mr. Ratliff had lost a considerable amount of blood. He further testified that the leg was completely broken and turned

back and was just "dangling there on the leg." Two physicians worked three and a half hours in the reduction on this compound fracture. Ratliff's treating doctor, Doctor Chinn, said he was intimately associated with him and treated him for approximately fifty days he was in the hospital and had known him for a number of years. One of his partners at his Clinic was Ratliff's family physician. He testified that from his records and his knowledge of Mr. Ratliff's health he was in fair general health before the accident. After stating that Mr. Ratliff had diabetes, liver trouble and hardening of the arteries, he testified that at the time of the accident such ailments were dormant and inactive. Medical testimony revealed that Mr. Ratliff developed ulcers in the stomach which were precipitated by the unusual stress brought about by the accident. Prior to his death there was extreme hemorrhaging on the ulcers in the stomach and, in the doctor's opinion, the ulcers and the hemorrhaging were a direct result of the injury to the leg. Doctor Chinn testified that the injuries sustained by Mr. Ratliff namely, the broken tibia and fibula, the stress ulcer and loss of blood were the immediate and primary causes of his death.

Doctor Brooks, who was called by the appellant, was asked the following question:

"Q. Would you say this: That the injury was the direct cause of his death in his then condition. Here is a man with all of these disorders that you have testified about here, and he goes out and breaks his leg and it breaks the bone completely, his leg is just dangling by the skin—both bones broken and sticking through the flesh; he is four hours getting to the hospital; he is an active lawyer doing an excessive amount of legal work, and taking care of his farm and so forth; and he is confined to this bed for fifty days, and he died. The question I am asking you is: Would you say that this injury was the direct cause of his death in his then condition at the time of the injury?

He answered:

"A. Yes. I think I would have to answer 'yes' to that question. 'In his then condition.'"

Appellant relies primarily on Mutual Benefit Health & Accident Association v. Hudman, 398 S.W.2d 110 (Tex.Sup.Ct. 1965), as authority for its point that there is no evidence that Ratliff's death resulted directly and independently of all other causes from bodily injuries through purely accidental means. We do not consider that case in point. The Court in Hudman said in the first paragraph of the opinion:

"The question presented is whether Mary Louise Hudman, the beneficiary of an accident policy which limited coverage to death from accidental injury 'independently of other causes' may recover under the policy when the insured's death resulted from the combined effects of the injury and a pre-existing disease."

There was some medical testimony in the case at bar that the pre-existing diseases, to-wit, diabetes, liver trouble and hardening of the arteries were dormant and inactive at the time Mr. Ratliff broke his leg. Dr. Chinn also testified that breaking his leg, stress ulcers and loss of blood were the cause of Ratliff's death. In the Hudman case the court makes it abundantly clear that:

"All of the evidence shows that Hudman died from the effects of two concurring causes. The cause of death was proved by three medical experts, one called by the plaintiff and two by the defendant. Their testimony is in agreement that death resulted from fibrillation of Hudman's heart and the evidence shows that Hudman's overexertion and his diseased heart concurrently caused the fibrillation."

The Court further said:

"It took both causes to produce death and but for both, death would probably not have occurred. We conclude that by definition of the policy terms and by logic, the policy

coverage was limited to accidental bodily injuries which must be the sole cause of death."

The Court clearly states in Hudman that they were not holding that every pre-existing frailty or enfeeblement of the human body which exists at the time of an accident will defeat recovery under policies similar to the one involved in Hudman. The Court cites with approval Silverstein v. Metropolitan Life Insurance Company, 254 N.Y. 81, 171 N.E. 914 (1930) in which Chief Justice Cardozo said:

"A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules."

Competent evidence of qualified persons separated the real causes of Mr. Ratliff's death from mere conditions thereby raising issues of fact which the court has found against Appellant. Appellant's no evidence points are overruled.

We have considered all of Appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.