**BENEFIT TRUST LIFE INSURANCE COMPANY, Appellant,**

v.

**Alfred L. JACKSON, Appellee.**

**No. 282.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Oct. 15, 1969.

Rehearing Denied Nov. 19, 1969.

F. Walter Conrad, Jr., Baker, Botts, Shepherd & Coates, Houston, for appellant.

Jonathan Day, Tom Alexander, Butler, Binion, Rice, Cook & Knapp, Houston, for appellee.

SAM D. JOHNSON, Justice.

Appellee, Alfred L. Jackson, brought this suit against Benefit Trust Life Insurance Company on a policy of insurance issued by the appellant which insured against two

kinds of losses. First, it insured against losses resulting from sickness. Secondly, against losses resulting from bodily injury.

Under the sickness provision, if the appellee's disability was caused by disease alone, or by a combination of disease and injury, appellant was obligated to pay monthly benefits of $100 to appellee for 12 months. Appellant did not contest its obligation under this sickness provision and duly made 12 monthly payments of $100 each to appellee. This policy provision and appellant's obligation thereunder is not in issue.

The policy further provided, however, that if appellee suffers bodily injury occasioned "directly and independently of all other causes" and resulting in total disability, then appellant is obligated to pay monthly benefits of $100 to appellee for the duration of such disability. The instant suit was brought under this policy provision. In response to special issues the jury specifically found that Jackson sustained total disability resulting directly and independently of all other causes from bodily injury effected through accidental cause on August 12, 1964. Though incidental to the instant determination, the jury further found that such total disability was permanent, that appellant repudiated its obligation to pay monthly accident benefits without just excuse, and that Jackson should be reasonably compensated for future total disability in the amount of $21,120. The court entered judgment on the jury's findings and the appellant duly perfects its appeal to this Court.

It appears that appellee was employed as a railroad chair car attendant. On August 14, 1964, he experienced pain in his back and left hip while lowering a suitcase from an overhead shelf-rack for a passenger. He was thereafter off work until the fall of 1966. Prior to the event related, the appellee had experienced no back or hip pain and he has consistently contended that his condition was caused by the accident. Appellee contended in the trial court, as he does here, that it is the accident benefit

portion of the insurance policy which is applicable. Without reference to the duration of the total disability sustained, the essential question is whether or not Jackson's bodily injury resulting in such disability occurred "directly and independently of all other causes."

Appellant's contention is that appellee's disability (beyond the initial 12 months) is established by the uncontradicted medical testimony in the record. Such testimony, contends the appellant, is that the appellee was afflicted with arthritis before August 12, 1964, and that hypertrophic degenerative changes were occurring in his hips and lumbar spine prior to that date. Appellant asserts that the uncontradicted medical testimony proves that appellee's disabled condition resulted completely or in part from arthritis.

Appellee testified that he had been healthy and active before the accident of August 12, 1964. He stated that he had never experienced back or hip pain and that he had never been advised that he had arthritis. The record contains no indication that the appellee had any knowledge of any pre-existing arthritic condition.

Medical testimony relative to appellee's hip condition was given by three physicians, two of whom were called by the appellant. Both of the doctors called by the appellant were of the opinion that arthritis was the cause of appellee's disability.

Dr. William S. Harwell was the first physician called by the appellant. He was the doctor under whose supervision the X-ray photographs of the appellee's hips and spine were made on May 24, 1965. He testified that the X-rays revealed two things. First, mild hypertrophic and degenerative arthritic changes in the lumbar spine. Secondly, marked degenerative arthritis, involving the left hip joint, with similar but less advanced changes on the right.

Dr. E. J. Tucker was the second physician called by the appellant. He testified that he performed a complete orthopedic

examination on appellee on May 24, 1965. Based on such examination and the X-ray photographs which he had and examined, it was his opinion that the appellee had "osteoarthritis of the hip, most marked on the left. He has early osteoarthritis of the lumbar spine." He testified that the condition present in appellee's hips and lumbar spine required "at least three years or longer" to reach that stage. He further testified that the injury sustained on August 12, 1964 would not have prevented the appellee from returning to work but that the arthritis would.

Dr. W. B. Thorning was called by the appellee. He was the appellee's physician. He testified to his opinion, as appellant's doctors had testified, that osteoarthritis was present in appellee's hip at the time of the accident. He further stated that if this arthritic condition had not been present at the time of the August 12, 1964 event, appellee would have recovered in approximately six weeks. In a report to appellee's employer, he stated that " * * * it is expected that there will be no permanent disability as a result of this injury. However, the pain in the hip area may persist for a period of time because of the presence of the underlying arthritis."

The instant case finds its authority in two recent cases. The first is Mutual Benefit Health & Accident Ass'n v. Hudman, 398 S.W.2d 110, (Tex.Sup.1965). There the policy of insurance limited coverage to death from accidental injury occasioned "independently of other causes." The fact situation shown by the evidence was that Hudman died in his pick-up truck of ventricular fibrillation after he had worked hard on a hot day that was marked by extreme fluctuations in humidity. The Court stated that all the evidence indicated, however, that there were two concurring causes of death. First, the plaintiff had a pre-existing heart disease. Secondly, the overexertion of the diseased heart which occasioned the fatal fibrillation. As the pre-existing diseased heart was a concurring cause of death, the Court determined that there was no coverage under the policy. The Court stated that under such policy provision, recovery would be allowed only when such "preexisting condition or disorder is so remote in scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute to the death or injury."

The second case, Great American Health & Life Ins. Co. v. Lothringer, 422 S.W.2d 543, writ ref., n. r. e., applied the Hudman rule. The insurance policy there insured against loss or disability resulting directly from bodily injury "effected directly and independently of all other causes through accidental means." Lothringer, the plaintiff, was in her late fifties and was a heavy person. She was an office clerk who had never had trouble with either of her knees. While in a bank to make a deposit for her employer, her feet slipped from under her and she fell, with her leg twisted under her. The medical testimony revealed, however, that Mrs. Lothringer's disability to her knees was caused by a combination of her external injuries occasioned by her fall and a pre-existing arthritis. The Court there concluded as a matter of law that her disabilities were not caused by accidental means independently of all other causes. The Court quoted words of Hudman, supra, in holding that her disability was not covered by the policy because of her pre-existing arthritic condition.

In the instant case there is no medical testimony which in any way indicates the pre-existing arthritic condition was in any way temporary and transient. Quite to the contrary, it was more nearly characterized as being degenerative and irreversible. Neither can the medical testimony be said to support a contention that the pre-existing arthritic condition did not materially contribute to the incapacity. Again, quite to the contrary. It was in no way insubstantial because Dr. Thorning was of the opinion that his patient should have recovered in six weeks, but for the pre-existing arthritic condition. Dr. Tucker, likewise,

isolated arthritis as the cause of appellee's condition and expressly repudiated the notion that the events of August 12, 1964 could have caused the arthritic condition revealed by the X-ray photographs.

We believe that the most hopeful contention that could be made by the appellee is that the pre-existing arthritic condition was dormant at the time of the initial injury. In response to questions by appellee's counsel, Dr. Thorning gave the following testimony:

Q. "Can you say that the arthritis which he [appellee] had would have ever caused any disability to him if it hadn't been for the accident?"

A. "No, sir."

Q. "Was or was not the arthritis that he [appellee] had dormant and insubstantial, insofar as it might contribute to any injury or incapacity at the time he had the accident in August 12, 1964?"

A. "I assume it was."

Q. "He had no evidence to the contrary, did he?"

A. "No, sir."

Dr. Thorning only "assumed " that appellee's arthritis was dormant and insubstantial due to a lack of "evidence to the contrary." Such assumption, however, was based upon lack of complaint by appellee of prior hip pain (to which the doctor testified) and the fact that the doctor himself had no knowledge of the pre-existing arthritis until the X-rays were made. Dr. Thorning thereafter testified that but for the pre-existing arthritis the appellee would have been able to return to work and would have recovered in approximately six weeks. Stated another way, as Dr. Thorning did in his letter to the appellee's employer, "it is expected there will be no permanent disability as a result of this injury. However, the pain in the hip area may persist for a period of time because of the presence of the underlying arthritis."

We believe the facts in the instant case to be substantially different from those found in Mutual Benefit Health & Accident Ass'n. v. Ratliff, 440 S.W.2d 119, no writ hist. The plaintiff there was a 68-year-old attorney who inadvertently stepped into a hole and fractured both bones in one of his legs. He did not see a doctor until some four hours after the accident. During this time he lost a considerable amount of blood. The doctor who saw him testified that the leg was completely broken, was turned back and was just "dangling there on the leg." He thereafter developed ulcers in the stomach which were precipitated by the unusual stress brought about by the accident. Prior to his death some fifty days after his accident there was extreme hemorrhaging on the ulcers in the stomach, and in the doctor's opinion, the ulcers and the hemorrhaging were a direct result of the injury to the leg. The doctor testified that the injury sustained by the plaintiff, namely the broken tibia and fibula, the stress ulcer and loss of blood were the immediate and primary causes of death. The plaintiff had several serious pre-existing diseases, including diabetes, liver trouble and hardening of the arteries which pre-existed his injury. Nevertheless, medical testimony was to the effect that these ailments were dormant and inactive. The Court held that evidence, including evidence that insured's ulcers and fatal hemorrhaging were the direct result of the broken leg and that his pre-existing ailments were dormant, sustained a finding that death resulted directly and independently of all other causes from bodily injuries sustained through purely accidental means.

The facts in Ratliff, however, are far removed from those in the instant case. Here all of the medical testimony concurs in the conclusion that the pre-existing arthritic condition, if not the sole cause of appellee's disability, was at least a concurring cause. The pre-existing arthritic con-

dition cannot be said to be "so remote in scale of causation, so dormant and insubstantial, or so temporary and transient that it does not materially contribute" to appellee's disability. Mutual Benefit Health & Accident Ass'n v. Hudman, supra, 398 S. W.2d at p. 114. It cannot therefore be said that appellee suffered his condition "directly and independently of all other causes" from bodily injury.

For the reasons stated, we are compelled to conclude as a matter of law that appellee's disability did not occur directly and independently of all other causes. There is no evidence in the record to support the submission of the special issue inquiring on this subject to the jury. Having made this determination we do not reach the remaining points of error. We must reverse and render the judgment of the trial court.

Reversed and rendered.