**HOME SAVINGS ASSOCIATION, Appellant,**

v.

**SOUTHERN UNION GAS COMPANY, Appellee.**

**No. 6226.**

Court of Civil Appeals of Texas, El Paso.

Sept. 20, 1972.

Rehearing Denied Nov. 8, 1972.

Ken Griffin, Deaderick, McMahon, Cox, Todd & Tidwell, Robert B. Cox, Odessa, for appellant.

Rassman, Gunter & Boldrick, Emil C. Rassman, John Gunter, Midland, Claude D. Bell, Jr., Dallas, for appellee.

OPINION

RAMSEY, Chief Justice.

This suit was brought by Plaintiff-Appellee, Southern Union Gas Company, against several defendants, among whom was Appellant, Home Savings Association, to recover for gas lighting and air conditioning equipment sold by Southern Union to Lawrence Black and Lawrence Black Homes, Inc. The equipment was installed as fixtures in an apartment house complex in Pecos by Lawrence Black, who had received interim construction financing from the Appellant, Home Savings Association. Trial was before the Court, which entered judgment for Southern Union against the defendants, jointly and severally. Home Savings is the only defendant perfecting an appeal. We affirm in part, and in part reverse and render.

The terms of the judgment provided that Southern Union recover from the defendants, Lawrence Black Homes, Inc., Home Savings Association, and George L. Johnson, Jr., jointly and severally, $18,407.18 for sixteen air conditioners, plus accrued interest from April 1, 1967, less $4,800.00 promotional allowance. Further, that Southern Union recover from the defendants, Lawrence Black, Lawrence Black Homes, Inc., Home Savings Association, and George L. Johnson, Jr., jointly and severally, the sum of $467.50 for twelve gas lights, plus interest from April 1, 1967. The Court also awarded Southern Union attorney's fees in the sum of $3,500.00 against all defendants, jointly and severally. The judgment further provided that Home Savings hold harmless and indemnify George L. Johnson, Jr. from all losses, costs, expenses and monies payable by Johnson under the terms of the judgment.

Because of the somewhat intricate questions involving various types of liens, lien priorities and security interests in fixtures, it is necessary to set out the factual situation in some detail. The parties filed an agreed statement of facts. The record reveals that Lawrence Black, on March 14, 1966, applied to Home Savings for interim and permanent loan commitments in the amount of $305,000.00 to build a thirty-two unit apartment complex in Pecos. The loan application was approved by Home Savings on April 15, 1966, and, on April 18, 1966, Lawrence Black executed a note for $305,000.00 payable to the order of Home Savings, secured by a deed of trust of even date to W. Curtis Johnson, Trustee, for Home Savings, Beneficiary, securing the obligation and providing a lien on the real estate involved which included a legal description of the property. The deed of trust was properly filed in Reeves County on April 19, 1966, and recorded on April 22, 1966.

On March 31, 1966, Black purchased twelve gas lights from Southern Union and executed a security agreement and financing statement. On June 14, 1966, Lawrence Black Homes, Inc. purchased sixteen air conditioning units from Southern Union and executed a security agreement and financing statement. By September, 1966, the gas lights and air conditioning units had been installed as fixtures in the apartment complex. Southern Union filed the financing statement as to the gas lights on May 1, 1967, and filed the financing statement as to the air conditioners on November 2, 1966.

During the course of construction, Lawrence Black Homes, Inc. submitted various bills for materials and labor, at which time Home Savings would disburse monies in payment from the interim loan funds, after verification.

Southern Union knew that Home Savings was furnishing the construction financing at the time the air conditioners were purchased, but did not know this at the time of the sale of the gas lights. Southern Union also knew that both items were to be installed in the apartment complex as fixtures. After repeated billings, Lawrence Black assured Southern Union that payment would be made not later than April 1, 1967, when he expected to receive the balance of the permanent loan commitment. Southern Union dealt solely with Black, and did not

notify Home Savings of its claims until four or five days after Home Savings had foreclosed under its deed of trust. The foreclosure sale under the deed of trust occurred on June 6, 1967, at which time Home Savings was the only bidder and purchased the apartment complex for $275,-000.00. Home Savings had no actual knowledge of the claims of Southern Union and the latter received no notice of the foreclosure sale, though notice of the sale was given by Home Savings to Black.

Home Savings contacted Southern Union about changing the billing on the gas furnished, which was some four or five days after the foreclosure sale, and, as a result of this, Southern Union advised Home Savings of its claims and demanded its units or payment. On June 28, 1967, Home Savings sold the apartment complex to George L. Johnson, Jr. for the sum of $325,000.00. Home Savings furnished Johnson a hold harmless letter in regard to the claims of Southern Union.

Conclusions of law found by the Court below were that Southern Union had a valid constitutional lien on the air conditioners and gas lights; that Southern Union perfected its security interest under the Texas Business and Commerce Code; that Southern Union had a valid chattel lien on the equipment which was inferior to the lien of Home Savings under the recorded deed of trust, that the items in question were in fact fixtures; that the foreclosure sale was conducted without commercially reasonable notice to Southern Union; and that Home Savings and Johnson were not bona fide purchasers for value as to Southern Union's claims.

Before examining Home Savings' points of error, several facts should be re-emphasized. The date of the purchase of the gas lights was March 31, 1966, and the financing statement was filed on May 1, 1967, or some thirteen months later. The air conditioners were sold on June 14, 1966, and the financing statement was filed on November 2, 1966, or some four months later. The Texas Business and Commerce Code

became effective on June 30, 1966, and all matters involved in this controversy transpired prior to the 1967 amendment to the Code.

Home Savings complains of the trial Court's judgment under seven points of error. Southern Union in its counterpoints asserts the correctness of the action of the trial Court under three lien provisions, any one of which would support a judgment in some respect in favor of Southern Union, if correct. These lien provisions are the constitutional liens provided by Art. 16, Sec. 37, Texas State Constitution, Vernon's Ann.St., the statutory lien provided by Title 90, Chap. 2 (specifically Art. 5459), Vernon's Ann.Tex.Civ.St.; and the chattel lien as provided for secured transactions under Chapter 9, Texas Business and Commerce Code (Uniform Commercial Code), referred to in this opinion as the Code. The respective rights of the parties will be discussed under each of the above lien theories, and in the order in which they are listed.

The trial Court held that Southern Union had a valid constitutional lien. Art. 16, Sec. 37, of the Texas State Constitution provides:

"Mechanics, artisans and materialmen, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

■ The constitutional lien is self-executing, Continental Radio Company, Inc. v. Continental Bank & Trust Company, et al., 369 S.W.2d 359 (Tex.Civ.App.1963, writ ref'd n. r. e.), and exists independently of Art. 5453, V.A.T.C.S., providing for the enforcement of liens. See also Strang v. Pray, 89 Tex. 525, 35 S.W. 1054 (Tex.Sup. Ct.1896).

In viewing the facts of this case, we are confronted with the issue of whether or not Appellant's deed of trust was superior

to Appellee's constitutional lien. In deciding such issue, the crucial question of "inception" must be determined. In reaching the question of inception, the rule of the case of Oriental Hotel Co. et al. v. Griffiths et al., 88 Tex. 574, 33 S.W. 652, decided in 1895, must be examined. The holding as enunciated in Oriental Hotel (supra) was that:

> "The lien, then, which is secured by statute extends in favor of each, from the beginning to the completion of the work, and if it so extends and embraces all that has been done from the beginning to the completion, its 'inception' must be the time to which it is made to relate in giving effect. The word 'inception' means 'initial stage.' Cent.Dict. It does not refer to a state of actual existence, but to a condition of things or circumstances from which the thing may develop. When the building has been projected, and construction of it entered upon,—that is, contracted for,—the circumstances exist out of which in all future contracts for labor and material necessary to its completion may arise, . . . ."

The holding in Oriental Hotel (supra) was distinguished in Sullivan et al. v. Texas Briquette & Coal Co. et al., 94 Tex. 541, 63 S.W. 307 (1901). In that case, the Supreme Court in holding that mechanics' liens for improvements, which were contemplated by the mortgagor prior to the execution of the mortgage, but which were not contracted for until later, were inferior to the mortgage stated:

> "The honorable court of civil appeals cites the case of Hotel Co. v. Griffiths in support of its decision in this case. We think the distinction between the two cases is broad, and perfectly plain. In that case Griffiths had entered into a contract with the Oriental Hotel Company for the construction upon the lot which it then owned of a building according to specifications then furnished, and embracing all work which was subsequently done, or for which material was furnished, by the persons who claimed

liens in that case. The bonds were issued and the mortgage given for the purpose of securing the payment of that contract, and the deed of trust itself secured a lien upon the house to be built. A separate agreement provided that the funds should be placed in the hands of a trustee, to be paid out upon the estimates of the architect as the building progressed. This court held that in issuing those bonds and in making the deed of trust to secure them the completion of that contract according to the specifications was in the contemplation of the parties, and that the liens for all material furnished and labor done in the performance of that contract had their 'inception' when the contract was made, which was prior to the time the deed of trust to secure the bonds took effect. While we believe that the decision in that case is amply sustained by the law, and correctly made, we are of the opinion that the facts of the case demanded and the opinion went as far as the law justifies to sustain such liens, which are much favored by our constitution and laws."

The question of inception was again examined by the Supreme Court in McConnell et al. v. Mortgage Investment Company of El Paso, Texas, 157 Tex. 572, 305 S.W.2d 280. In holding the deed of trust to be superior to the mechanics' and materialmen's liens, the Court stated:

> "There is no evidence that we have been able to discover in this record—and none has been pointed out by the able attorney for the defendants in error— which shows that at the time the mortgage was executed any contract for this improvement had been let, or that the particular improvements were intended to be provided for by the making of that mortgage. The inception of the liens which are claimed in this case by the defendants in error was subsequent to the date of the lien of the mortgage to secure the bonds asserted by the plaintiffs in error, and was, therefore, subordinate to the lien of that mortgage.

* * * * * *

"Similarly in Pierce v. Mays, Tex.Civ. App., 277 S.W.2d 155, 157, affirmed Mays v. Pierce, 154 Tex. 487, 489, 281 S.W.2d 79, the same Court said:

'As to the remaining mechanic's and materialman's liens, the record reveals no general contract with the owner as to the erection of the improvements. The work and materials were furnished directly to the owner by the various mechanics and materialmen individually. Therefore, these various lien securing debts as to material and labor furnished had their inception as of the date the same were furnished. Crabb v. William Cameron & Co., Inc., Tex. Com.App., 63 S.W.2d 367. As revealed by the trial court's findings of fact, the inception of the liens of these various remaining claimants was subsequent to the execution and recordation of the Mays' deed of trust and such liens would therefore be inferior to the said deed of trust. * * *'

"See Allen Wight, Mechanic's Liens, 2 Texas Law Review 77, discussing Oriental Hotel Co. v. Griffiths, also, 29 Tex.Jur. 558, 560, Mechanic's Liens §§ 84, 91."

In Irving Lumber Company v. Alltex Mortgage Company, Inc., Tex.Civ.App., 446 S.W.2d 64, the Court, in considering the significance of the holding in McConnell (supra) stated, quoting the Court's opinion:

"An extension of the doctrine of the Oriental Hotel Co. case would be required to support the holdings of the courts below. It would be necessary to say that the 'beginning of the work' is the same as 'the projection of the building and the execution of a contract for its construction.' In 1901 this Court refused to make a similarly proposed extension—but in effect held that the doctrine announced in the Oriental Hotel Co. case 'went as far as the law justifies,' and hence should not be expanded to apply to factual situa-

tions not strictly analogous to those disclosed in the reported opinion."

See also Irving Lumber Company v. Alltex Mortgage Company, Inc., Tex. (Opinion by Supreme Court), 468 S.W.2d 341.

The expressed holdings of the Courts of this State favor a construction of lien priorities to protect laborers and suppliers of material under the constitutional lien provisions, with the admonition that the theory of the Oriental Hotel case be cautiously applied and not expanded. Sullivan et al. v. Texas Briquette & Coal Co. et al. (supra). While the Oriental Hotel case deals with a "general construction contract," two Courts of Civil Appeals cases have applied the "relation back" doctrine where contracts were involved other than general construction contracts. Investor's Syndicate et al. v. Dallas Plumbing Co., Inc., Tex.Civ.App., 61 S.W.2d 1039 (n. w. h.), and Abilene Savings Association et al. v. Roderick et al., Tex.Civ.App., 418 S.W.2d 695 (n. w. h.). In each of these cases, it should be noted that an agreement or contract was made for the furnishing of labor and/or material prior to the execution of the mortgage. In addition, however, performance was commenced on the property under the terms of the agreement. A similar contractual situation existed in Security Lumber Company, Inc. v. Weighard Construction Company et al., Tex.Civ.App., 413 S.W.2d 745, in which case the Texarkana Court of Civil Appeals held sufficient under the Oriental Hotel doctrine to relate subsequent deliveries of material back to the original contract whereby the constitutional lien was given priority over an intervening mortgage. The Supreme Court, in affirming the Texarkana Court, expressly declined to decide whether or not a special contract (as opposed to a general construction contract) would suffice to invoke the "relation back" doctrine. Its holding is to the effect that the first delivery of the material to the job site created the "inception" and sub-

sequent deliveries would relate back to the first and thereby the constitutional lien was prior to an intervening deed of trust. University Savings and Loan Association et al. v. Security Lumber Company, Incorporated, 423 S.W.2d 287 (Tex.Sup.Ct. 1967).

In this case, the owner-contractor (Black) and Southern Union entered into an agreement on March 31, 1966, for the furnishing of the gas lights and into an agreement on June 14, 1966, for the air conditioners. The stipulated facts do not reveal when the lights were delivered. There is no finding of the trial Court in this regard, but Home Savings twice asserts in its brief that the gas lights were delivered after the execution of the deed of trust. Since these assertions are not controverted, we accept the statements as correct, and, if correct, the delivery of both the gas lights as well as the air conditioners occurred after the execution and recording of the deed of trust. We can only conclude that the constitutional lien of Southern Union had its inception for priority purposes after the deed of trust held by Home Savings and is therefore subordinate to the deed of trust. It should be noted that the only complaint made by Southern Union as to the trustee's sale is the failure of Home Savings to give notice of the sale as is provided in the Code. This will be subsequently discussed. In the absence of some irregularity, the foreclosure of Home Savings' deed of trust would then defeat the subordinate constitutional lien of Southern Union. McConnell et al. v. Mortgage Investment Company of El Paso, Texas (supra).

Southern Union also contends that the judgment of the trial Court should be affirmed by reason of the removability of the fixtures and the lien arising from the provisions of Art. 5459, V.A.T.C.S. In support of this contention, Southern Union cites Parkdale State Bank et al. v. McCord, Tex.Civ.App., 428 S.W.2d 121 (writ ref'd n. r. e.); Irving Lumber Company v. Alltex Mortgage Company, Inc. (supra); Chamberlain v. Dollar Savings Bank of New York, Tex.Civ.App., 451 S.W.2d 518 (n. w. h.). The lien referred to in this article is a statutory lien provided for mechanics, contractors and materialmen under Title 90, Chap. 2, V.A.T.C.S., the lien being specified in Art. 5452, V.A.T.C.S. Article 5453 prescribes the procedure for fixing and securing the lien. In each of the cases relied on, the prescribed affidavit was filed. Here, no attempt was made by Southern Union to comply with the requirements of the statute, and, by its failure to do so, no lien was fixed which would entitle Southern Union to recover under the provisions of this statute.

Secured transactions are governed by Chapter 9 of the Code. The parties are in agreement that the gas lights as well as the air conditioners are fixtures on realty. Subchapter C of Chapter 9 of the Code defines the rights of third parties, sets forth the rules as to perfected and unperfected security interests and the rules of priority of security interests in fixtures. Code Section 9.301 provides that an unperfected security interest is subordinate to the rights of:

> "(1) persons entitled to priority under Section 9.312;
>
> (2) a person who becomes a lien creditor without knowledge of the security interests and before it is perfected;"

Section 9.312(a) provides that Section 9.313, covering security interests in fixtures as against interests in real estate, shall govern priority. Section 9.313(b) provides that a security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate, except as stated in Subsection (d) of Section 9.313. This subsection provides:

> "The security interests described in Subsections (b) and (c) do not take priority over * * *

(3) a creditor with a prior encumbrance of record on the real estate to the extent that he makes subsequent advances if the subsequent purchase is made, . . . . . . or the subsequent advance under the prior encumbrance is made or contracted for without knowledge of the security interest and before it is perfected. . . . . . . "

■ Applying these rules to this case, Home Savings' lien on the real estate was evidenced by its deed of trust filed on April 19, 1966. Southern Union's security interest attached on the gas lights on March 31, 1966, but no attempt was made to perfect it by filing the financing statement until some fourteen months later, on May 1, 1967. The security interest on the air conditioners attached on June 14, 1966, but no attempt was made to perfect it until the financing statement was filed on November 2, 1966. The record is undisputed that Home Savings had no actual knowledge of Southern Union's security interests until four or five days after the foreclosure sale under its deed of trust. Thus, the security interest of Southern Union, even if properly filed, would be subordinate to Home Savings' lien to the extent of the amount advanced prior to November 2, 1966, with reference to the air conditioners, and the amounts advanced prior to May 1, 1967, as to the gas lights. An exhibit was attached to the agreed statement of facts showing the dates and amounts of disbursement but a portion of the exhibit is not legible. Home Savings asserts in its brief that $272,124.25 was advanced prior to November 2, 1966, and that $295,473.59 was advanced prior to May 1, 1967. In the absence of these figures being challenged, we accept them as correct. Thus if we were to assume that the financing statements were properly filed, we would nevertheless conclude that Home Savings' deed of trust lien was prior and superior to Southern Union's liens at least in these amounts.

The validity and priority of Southern Union's security interests, insofar as third parties are concerned, must be dependent on a proper filing of financing statements to give notice of the security interest. Subchapter D of Chapter 9 of the Code prescribes the required procedure. The basic intent of the Code is the matter of knowledge or notice, whether actual or constructive, of the security interest even though there may be irregularities or error in the financing statement. See Section 9.401. Section 9.402 prescribes the formal requisites for the financing statement and provides:

"When the financing statement covers . . . . goods which are or are to become fixtures the statement must also contain a description of the real estate concerned".

This provision was amended in 1967 to require the name of the record owner of the real estate, but this provision had not been enacted at the time the facts involved in this case occurred.

The same intent relating to describing the real estate pertains to a description of the property involved as provided in Section 9.110:

"For the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

The majority of the text writers on the sufficiency of the description of the real estate favor the view that the property may be described by street number address. "Fixtures Under the U.C.C.," 21 Sw.L.J. 713, p. 720; Texas Banker's Association Lending Officer's Manual 19 (1966); Bender's U.C.C. in Texas, Hart & Willier, Code 9.103 & 9.104, Vol. 2, Sec. 91A.09, pp. 9–70; Hamilton, "Integration of UCC Fixture Filings with the Real Estate Recordation System," 45 Texas L.Rev. 1175, p. 1187. In the two financing statements filed in this case, in Block 1 of the financing statements, the name of the debtor was shown with his mailing address as "800 Doggett

Street, Pecos, Texas." This address was the address where the apartments were being constructed, and the same property on which the Home Savings had issued its letter of commitment and interim financing agreement. Other correspondence introduced as exhibits showed Black's mailing address to be in Odessa, Texas.

Block 5 of the financing statements is the space provided for a description of the collateral and the real estate concerned. One statement merely showed "Gas Lights" and the other specified 6 air conditioners of a numbered designation and 10 air conditioners of another numbered designation. No description was included in Block 5 to describe the real estate on which the items were located. Southern Union contends that the mailing address of the debtor as shown in Block 1 is sufficient notice to Home Savings and suffices to comply with Section 9.402(a) of the Code, which provides:

"A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party . . . ., gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. * * * When the financing statement covers . . . . goods which are or are to become fixtures the statement must also contain a description of the real estate concerned, . . . ."

Section 9.402(e) provides:

"A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

We find no decisions, either in this State or any other State, construing the precise point in issue here. Robert W. Hamilton, in his article appearing in 45 Texas L. Rev. 1175, states in footnote number 48, page 1187:

"The standard form financing statement prescribed by the Secretary of State pursuant to Sec. 9.408 contains separate blocks for 'Debtor(s) (Last name first) and Mailing Address' and the description of the real estate if the financing statement covers fixtures. Hence, even though the mailing address and description of real estate on which the fixtures is affixed are identical, the address will have to be entered twice."

The Code distinguishes the requirements for financing statements when it relates to fixtures by requiring a description of the real estate. This provision is indicative of a legislative intent that such be mandatory, without providing precisely in what manner the real estate be described. Conversely, the failure to describe real estate affected, would comply with non-fixture filing. The failure to identify the real estate should not suffice to give constructive notice of a security interest in fixtures. The lack of more distinguishing features undoubtedly encouraged the 1967 amendment to the Code requiring a definite statement that fixtures were included in the collateral and the decision in Lone Star Gas Company v. Sheaner et al., 157 Tex. 508, 305 S.W.2d 150 (1957), is certainly justification for requiring the inclusion of the name of the record owner.

Prior to the enactment of the Code, the rights of the parties would have been governed by Article 5498, V.A.T.C.S. The requirement of this statute was very similar to the requirements of the real estate description provided in the Code. Under the provisions of this article, failure to describe the real estate was held not to comply with the requirements of the statute. Schumann v. Jenkins et al., Tex.Civ.App., 40 S.W.2d 214 (writ ref'd); Texas Power & Light Co. v. Malone et al., Tex.Civ.App., 42 S.W.2d 845 (writ dism'd); In re Riordan, 238 F.Supp. 5 (U.S.D.C.1965). The only reported case shedding any light on the construction of Code requirements, though not directly in point, indicates the

requirements of Code Section 9.402 as being mandatory in showing the debtor's address. In re Smith, 205 F.Supp. 27 (U. S.D.C.Pa.1962).

■ In view of the Code provisions prior to the June 18, 1967 amendment whereby the only distinction between non-fixture and fixture financing statements was the provision that in the latter instance it "must also contain a description of the real estate concerned," leads to no other logical conclusion but that the legislative intent was that the real estate description be mandatory, and in its absence, the security interest of Southern Union in the fixtures was not perfected so as to affect parties other than the parties to the transaction.

We conclude that Home Savings' points of error numbered one and two are well taken and are controlling in the disposition of this case. Having held that the financing statements are insufficient to impress the lien on fixtures dispenses with the necessity of discussing the failure to give reasonable notice under Code Section 9.504 (c) as well as the points of error pertaining to costs, expenses and attorney's fees since these matters could only arise under proper Code filing procedures.

■ The judgment of the trial Court awarded Southern Union recovery for money damages, interest and attorney's fees against Lawrence Black, Lawrence Black Homes, Inc., Home Savings Association, and George L. Johnson, Jr., jointly and severally. The judgment further provided that Home Savings Association indemnify and hold George L. Johnson, Jr. harmless under the terms of the judgment. Johnson did not perfect his appeal. Having

determined that the points of error presented by Home Savings entitles this defendant to a reversal of the judgment, it becomes necessary that the judgment as to the non-appealing defendant, George L. Johnson, Jr., also be reversed, since any liability of Home Savings to Johnson under this judgment can only exist if Home Savings is liable to Southern Union. In addition, to leave the judgment of Southern Union against Johnson undisturbed would still subject Home Savings to liability under its hold harmless and indemnity agreement. The reviewing Court has such authority to reverse as to nonappealing parties where the rights of the parties are interdependent. See Lipshitz et al. v. Lindsay Nat. Bank et al., Tex.Civ.App., 33 S.W.2d 874 (writ ref'd); Lockhart et al. v. A. W. Snyder & Co. et al., 139 Tex. 411, 163 S.W.2d 385 (1942); Curtis et al. v. Carey, Tex.Civ. App., 393 S.W.2d 185; Great American Health and Life Insurance Company v. Lothringer, Tex.Civ.App., 422 S.W.2d 543 (writ ref'd n. r. e.).

It is the opinion of this Court that the judgment of the trial Court as to the defendants, Lawrence Black and Lawrence Black Homes, Inc., be affirmed; that the judgment of the trial Court as to the defendants, Home Savings Association and George L. Johnson, Jr., be reversed and rendered and that the Plaintiff, Southern Union Gas Company, be denied any recovery from the defendants, Home Savings Association and George L. Johnson, Jr., and reverse and render the judgment of George L. Johnson, Jr. over and against the defendant, Home Savings Association, without prejudice to George L. Johnson, Jr. to recover under separate action any amounts to which he might be entitled under the terms of the agreement between the parties.