KNOXVILLE GAS COMPANY *v.* W. I. KIRBY & SONS.

(*Knoxville,* September Term, 1930.)

Opinion filed November 28, 1930.

LINDSAY, YOUNG & YOUNG, for complainant, appellant.

ELY, BUHL & ELY, for defendants, appellees.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This cause was heard by the chancellor upon the following stipulation of facts, to-wit:

"That on or about the 22nd day of December, 1927, W. A. Hart Construction Company owned a piece or parcel of land situated in the tenth ward of the City of Knoxville, Tennessee, known as 2109 Laurel Avenue, Knoxville, Tennessee; that it was at that time engaged in erecting on said parcel of land a modern apartment house, intending to erect same as a domicile completed as hereinafter described, for and to rent to tenants and to equip same with furnace, gas stoves and refrigerating systems; that said building was divided up into four separate apartments of a given number of rooms each;

that each apartment was to be equipped with a gas stove for the convenience and comfort of the tenants and as a means of receiving a better rent for each apartment, and said gas stoves were to be the only means of cooking in the apartment; a refrigerating system for the purpose of preserving foods and manufacturing ice for the convenience, health and pleasure of the tenants and that the whole was to be heated by one common heating system or furnace located in the basement. Said heating system, refrigerating system, and gas stove system were entirely separate each from the other.

"That the complainant, knowing that some of said stoves were to be placed in said apartment building sold and delivered a number of gas stoves to W. A. Hart Construction Company, including the four stoves over which this controversy has arisen; that the complainant knew that the four stoves over which this controversy has arisen would be used in the new apartment being constructed by the W. A. Hart Construction Company above mentioned; with the knowledge, consent and aid of the complainant a system of gas supply pipes was installed in said apartment building running from the main gas supply owned and maintained by the complainant in the street into and throughout said apartment building, to the four respective locations in the four respective kitchens of the four respective apartments, at which places in said kitchens said gas stoves were attached each to a single gas or supply pipe, of the said gas piping system, by means of a threaded 'union' or 'collar,' a fitting or coupling used by plumbers for such purposes so that the manner of attaching or detaching said gas stoves is by means of screwing and unscrewing said fitting which is done with a pipe wrench or ordinary monkey wrench;

that in selling said gas stoves and installing same together with said gas pipe system in said apartment building complainant proceeded in just the same manner it then did and still does in all ordinary cases of like nature; that complainant deals with apartment house sales and installations in a manner no different from similar sales and installations in private homes or otherwise; that said apartment was by Hart Construction Company intended to be rented to tenants and used and occupied as a thus equipped apartment house, and that the complainant had knowledge of the fact that the apartment was to be rented to tenants; that the Hart Construction Company thereafter sold said apartment as thus equipped including said stoves, frigidaires, etc., to W. A. Hart, and that in March, 1929, the said W. A. Hart again thus sold the same, for value, to the defendants W. I. Kirby & Sons; that W. I. Kirby & Sons had no notice of the fact that the complainant had sold said stoves under a conditional sales contract or was claiming any right thereto; the said W. I. Kirby & Sons believing that title of said stoves passed to them along with the title to said real estate; that said W. I. Kirby & Sons bought said apartment house for the purpose of using it as such, and, for the purpose for which it was created; that said stoves can be removed without injury to the freehold, but not without inconveniencing the tenants, and thus impairing *pro tanto* the rental value of the building, unless replaced by similar or other make of gas stoves, the intrinsic value of the building not equipped with gas stoves would be less *pro tanto* than the intrinsic value of the building if so equipped.

"That in selling said stoves to W. A. Hart Construction Company, the complainant never intended to part with its right as a conditional vendor of said stoves, and

that it actually entered into a written contract at the time of sale thereof to W. A. Hart Construction Company, whereby it was agreed among other things, that the complainant should retain the title to said stoves until fully paid for. A copy of this written contract is attached hereto, and identified as 'Exhibit A' hereto, and it is agreed may be read in evidence in this cause. That said written contract was never registered, and that said W. I. Kirby & Sons purchased said apartment wholly innocent of the knowledge of the existence of said written contract between complainant and the W. A. Hart Construction Company, and that W. I. Kirby & Sons were wholly ignorant of any indebtedness thereon in favor of the complainant, but bought said apartment from W. A. Hart on the date aforesaid in good faith and believing that they had a right to purchase said stoves along therewith, and that they were free of all encumbrance; a correct copy of the deed between W. A. Hart and wife to W. I. Kirby & Sons is attached hereto identified as 'Exhibit B' hereto and it is agreed may be read in evidence in this cause in lieu of the original; that Kirby & Sons now own and possess said apartment; that their vendors are wholly insolvent as well as the W. A. Hart Construction Company.

"That nothing has ever been paid on said written contract 'Exhibit A' hereto, said W. A. Hart Construction Company having breached its said contract, but there is still due and owing complainant thereunder the amount of the same including $125 with interest thereon from December 22, 1927, covering four of the stoves mentioned in said contract, placed in said apartment; that W. I. Kirby & Sons as aforesaid, knew nothing of the existence of said indebtedness at the time they purchased

and paid for said apartment house and until a short time before the bringing of this action; that they never assumed said indebtedness nor any part thereof, nor agreed to pay the same, nor any part thereof; that complainant made demand on W. I. Kirby & Sons for the return of said stoves, but W. I. Kirby & Sons refused to deliver said stoves to complainant.''

■ The controlling principle of law is thus stated in 26 Corpus Juris, 654:

''In the modern cases it is usually stated that whether an article or structure is part of the realty is primarily a question of the intention with which it was annexed or put in position, it being a part of the realty if there was an intention to make it a permanent accession to the land, and only then.''

This court, in discussing the rule of intention, in *Savage & Co.* v. *Mayfield*, 157 Tenn., 680, 681-682, said:

''This second ground of defense, sustained by the Chancellor, presents the question of the effect of the installation of this *quasi*-fixture in this mortgaged plant. The element of fixedness of location and use apparent here, tends to bring this machinery within the scope of the after-acquired clause of the recorded mortgage and the principle applied in *Bank* v. *Wolf*, 114 Tenn., 270. In that case certain propositions here pertinent were adjudged. Reviewing the authorities with his accustomed exhaustiveness, Mr. Justice Neil approves and adopts this statement of COOPER, J., from *Cannon* v. *Hart*, 1 Tenn. Ch., 22: 'The tendency of modern decisions is to make the rights of the parties to fixtures and buildings depend, not on the manner in which they are attached to the freehold, but upon the character of the parties, the intention in erecting the improvements, and the uses

to which they are put.' Whether attached by screws or by nails, once material, is no longer so. And a distinction is taken, as bearing on the question of intention, between erections and installations made by a tenant, whose possession is more or less temporary, and oftentimes for a purpose which contemplates the use thereof on the property in pursuance of the purposes of the possession only, and those made by an owner under circumstances which imply permanency. Summing up his discussion, Mr. Justice NEIL quotes approvingly from *Johnson* v. *Patterson,* 13 Lea, 626, in which loose machinery installed in a cotton factory was involved, the following:

" 'Modern authorities all agree that the most controlling test of the question whether property connected with real estate is to be deemed realty or a mere chattel, removable at the pleasure of the owner, is the intention and purpose of the erection. . . . But the intent and the nature of the property, taken as a whole, as the parties purchased it and treated it, concurred in making it a part of the freehold, and stamped it as realty, and it must so be held.' "

The Massachusetts Court, speaking through Chief Justice KNOWLTON, in *Hook* v. *Bolton,* 17 L. R. A. (N. S.), 701, in considering this question, said:

"We have not been referred to any case in which the court has decided that gas fixtures attached to a building and used with it are, as matter of law, personal property. They may or may not be, according to the facts and circumstances which tend to show that they do or do not belong to the building, and were or were not intended to remain with it as a part of it. As to the gas fixtures, the steam radiators, the kitchen range, and the window screens and door screens, the judge was right in sub-

mitting the questions to the jury, with proper instructions. *Allen* v. *Mooney,* 130 Mass., 155; *Ridgeway Stove Co.* v. *Way, supra; Jennings* v. *Vahey,* 183 Mass., 47, 97 Am. St. Rep., 409, 66 N. E., 598.

"The gas stove and the window shades, running on rollers, stand differently. It may be that certain apartment houses, or other dwelling houses designed for occupation by tenants, are constructed in some of our cities and intended to be used in such a way that the introduction of such gas stoves and window shades by the owner, to go with the house as a part of it, for use by the tenants, may hereafter be proved at a trial. See *Jennings* v. *Vahey, supra.* It is entirely possible that the mode of construction and use of certain kinds of houses may be such that articles of this kind will be made a part of the house for permanent retention and use in the places where they are put. If it becomes a practice to build and use houses in such a way these articles may be put in as fixtures. As to the application of the law, we agree with Lord Halsbury in what he said in *Leigh* v. *Taylor, supra,* in regard to the decisions of the courts: 'The facts have been regarded in different aspects, according to the fashion of the times, the mode of ornamentation, and the mode in which houses were built, and the degree of attachment which, from time to time, became necessary or not, according to the nature of the structure which was being dealt with.'

"In the present case we discover no evidence to war- rant the jury in finding that the gas stove and curtains were a part of the realty. So far as appears, the building in question was an ordinary dwelling house for a single family, and there is nothing to show that it was intended to be occupied or used differently from common dwelling

houses. These were ordinary articles of merchandise, not peculiarly fitted for use in this house, were of a standard pattern, loosely affixed and easily removed, and were of the nature of personal property. They were put into the house by the mortgagor, and were of a kind of articles which usually are carried away by an outgoing occupant. There was nothing to show that the owner intended to annex them as a permanent addition to the real estate. We think, upon the evidence, the judge was wrong in submitting to the jury the question whether they were a part of the realty."

 Upon the agreed facts the chancellor correctly held that the idea of permanency was in the minds of the contracting parties. A custom now prevails of completely equipping apartments with all modern conveniences for the benefit of tenants. Complainant had knowledge that its vendee was erecting this apartment house to rent and was fully equipping it for the purposes stated. If the purchaser of an apartment house had to ascertain, at his peril, whether every electrical device, gas equipment, kitchen cabinet, and the like, were paid for there would be imposed upon him an arduous, if not an impossible, task. This court has stated in several reported cases that the policy of the law is opposed to secret liens; and, in view of our previous decisions, we are of the opinion that the chancellor was right in dismissing the bill. In making sales upon the partial payment plan it is just as easy to take a mortgage and have it recorded, and little additional expense is incurred thereby.

 As pointed out above, a different rule applies in cases of landlords and tenants.

In 26 Corpus Juris, 704, it is said:

"The tenant under a lease has, from a quite early day, been allowed to remove what are known as domestic and ornamental fixtures, these being articles annexed to a dwelling in order to render it more comfortable and attractive as such. It has even been suggested that an article annexed to a room leased as an office, to render it more comfortable and convenient, may be regarded as a 'domestic fixture' for this purpose. This exception in favor of the tenant has been said to be based on 'the public policy and convenience, which permit the tenant to make the most profitable and comfortable use of the premises demised, that can be obtained consistently with the rights of the owner of the freehold,' and it has also been said that the tenant's right to remove such fixtures is grounded on the fact that they were put there by the tenant merely for his temporary domestic use while he occupied the premises.

"The right to remove domestic and ornamental fixtures is subject to the limitation which prevails as regards trade fixtures, that the removal is not permissible if it will cause substantial damage to the freehold."

Affirmed.