W. H. KEMBLE et al. v. J. H. WOLFE et al.

Eastern Section. December 19, 1931.

Petition for Certiorari denied by Supreme Court, March 26, 1932.

Caldwell, Brown & O'Dell, of Bristol, for appellants.
Burrow & Burrow, of Bristol, for appellees.

PORTRUM, J. Mr. and Mrs. E. K. Byrd and Jennie J. James owned a large house in the City of Bristol, Tennessee, which had been in use as a boarding house. One E. R. Shipley desired to lease this property for a term of five years with an option to buy the property during the term, and convert it into apartments to sublease. To accomplish this desired result it was necessary that extensive permanent improvements be made upon the property to make it available as an apartment house, and to realize monthly rentals from these apartments from the tenants. To this end the owners leased the property to Shipley for a term of five years at a nominal rental of $30 per month, with a provision that these permanent improvements be made, without specifying them, by the lessee, but that he assume any increase in taxes by reason of the improvements or otherwise, and also pay any street improvement assessments assessible against the property during the term of the lease. The lease further provided that the lessee could purchase or sell the property at any time during the term of the lease, for

a stipulated price of $13,000 payable to the owners, part in cash and the balance in deferred payments, but if the lessee failed to exercise this option he should return the property at the expiration of the lease, after reconditioning the property and leaving it suitable for the purpose for which it was to be used. Certain things to be done by the lessee at the expiration of the lease were designated in the contract. A supplemental agreement was attached to the lease specifying some of the permanent improvements to be done at the outset, among others being the installation of a hot air furnace. This property under the lease was taken over by the lessee who made of it a six or eight room apartment house, and installed six or eight bathrooms with their fixtures, placing in the same a number of gas stoves and heaters, together with electrical equipment or fixtures, window screens and the like. These improvements were made in the first few months of the lease, and the lessee was able to realize in monthly rentals the sum of $230. But he had expended in improvements the sum of $3000 or $4000. This lease went into effect April 5, 1921, and upon December 4, or eight months later, Shipley, with the consent of the lessors, assigned his lease to the defendant, J. H. Wolfe. As a consideration for this assignment Wolfe paid Shipley the sum of $5000, and assumed the rights and obligations of the lease. During the balance of the term Wolfe made a few insignificant permanent improvements; he permitted one or more of the annual installments of street assessments to default, and the lessor became uneasy and spoke to him about it, he assured the lessor that he expected to exercise his option of purchase, and promised her to pay the street assessments in full. The street assessments under the law were payable either at the completion of the improvements, or in annual installments over a period of ten years. One street improvement had been completed for three years and another one year and a half at the date of the expiration of the lease. But the defendant did not exercise his right to purchase the property, or find a buyer, and as a consequence the lease expired by its own limitation. The defendant did not make the repairs, and recondition the property as provided for in the lease, and which work was to be done at the expiration of the lease.

Within a few days after the expiration of this lease the owner of this property sold it to Mrs. W. H. Kemble, the daughter of Mrs. Byrd, for a stipulated support of the vendors during their natural lives. And as an incident they transferred all their rights and interests growing out of the leased estate named and held by the defendant. Mr. and Mrs. W. H. Kemble brings this suit against the defendant for the breach of his contract. They seek to recover the value of the necessary improvements which he contracted to

make at the expiration of the lease, and prior to the return of the property to the lessor. The defendant admits his failure to perform this provision of the lease contract; but says he made valuable permanent improvements expecting to exercise his rights to purchase the property, and since the lessor declined to allow him to exercise this privilege immediately after the expiration of the contract, he is entitled to set off the value of these valuable improvements against their claim for damages. For instance he says the lessee was required to install a hot air furnace, which could have been done for about $200, but the lessee installed a steam heating system which cost $1400, and since the lessee did more than he was called upon to do he is entitled to off-set this value against the claim for damages. He relies upon the maxim of "He who seeks equity must do equity." He files a cross-bill, and seeks to recover the amount paid in street improvements over and above the amount falling due during the term of his lease. And also the value of the six or eight gas stoves, which he claims are detachable fixtures, and which did not pass as permanent improvements.

The Special Chancellor held that the defendant was entitled to set off the value of these permanent improvements against the claim for a breach of the provisions of the contract, applying the maxim "He who seeks equity must do equity." He granted the defendant a recovery under his cross-bill for the amount of the street improvements falling due after the expiration of the lease, or that would have fallen due had it not been that the defendant had paid the installments as a whole during the term of the lease. He denied the claim of the defendant for the value of the gas stoves, for the reason that they were placed in the building with the intention that they would remain permanently there. The complainant appealed; and the defendant has prosecuted a writ of error.

The defendant admits that the $30 monthly rental, payable to the lessors, who were to pay the assessed taxes on the property, was a nominal rental, and that the moving consideration was the anticipated conversion of the property into apartments, and the permanent improvements to be placed upon the property by the lessee to make the conversion. The return passing to the lessee was the increased monthly rentals, of $230 per month, which were anticipated, together with the right to exercise his option to buy or sell. At the time the assignment of the lease was taken by the defendant the improvements had been made, and for the sum of $5000 he purchased a lease that would yield, during the term of the lease, $12,880, for which he paid $5000, leaving him a profit of $7880, upon paper. The lease had fifty-six months to run at a monthly rental of $230. As a business proposition he could well assume the remaining requirements stipulated in the lease. Is he in a position

to be released on these requirements under the maxim that "He who seeks equity must do equity?" This is a favorite maxim with a court of equity, and it is used to enforce claims that cannot be enforced by suit. But it is not used to make a new contract between parties, nor to destroy the anticipated consideration of an executed contract. Under these circumstances the lessee should have consulted the lessor before installing a heating plant costing $1400, and which materially increased the renting value of the apartments, instead of a hot air plant contemplated to cost no more than $200. The lessee had no right to burden the lessor with permanent improvements to increase the value of his leasehold estate. But the defendant did not install this heating system, and Shipley, who installed it, is making no claim for the additional value to be permanently added to the property by this additional expense incurred by him. The defendant acquired Shipley's leasehold estate in the property, and this assignment did not pass Shipley's personal property, nor his individual claim against the lessor for uncontemplated permanent improvements. We do not think the maxim is applicable, and to enforce it is not to do equity but inequity. We think the defendant should comply with the terms of the lease, and the judgment of the lower court is reversed in this respect and the suit remanded for a reference to determine which of the terms of the lease were not complied with, and the damage as a consequence.

In passing we say that the defendant had every opportunity to exercise his option to purchase, and that no restrictions were thrown in his way by the lessor; he had an agent on the ground, and he wrote the lessor letters before the expiration of the lease requesting an extension of time. Had he wanted to, he could have exercised his option by letter. He was asked why he didn't do this by letter, and replied:

"That is one thing I have followed up all my life that I never positively state I will do a thing until the time comes, . . ."

The time was at hand!

The complainants think they should not have to repay the street assessments which would have fallen due after the expiration of the lease for two reasons: first, the law provides that the assessments are due at the completion of the work, unless the landowner files a written agreement waiving all defenses to the method of assessment, as a consideration for the extension of payment in installments over a period of ten years. No agreement was filed, and therefore, the payments as a whole were due during the term of the lease, and the lessee had contracted to pay all payments due during the term of the lease. Second, and if this is not true, then

the lessee was under no obligation to pay the entire amount, and his payment was a voluntary payment. The lease provides as follows:

"And the party of the second part shall also pay any amount that may be assessed against said property for any street improvement that may belong to same that may be due and payable during the life of this agreement, but not thereafter."

We think the construction of this contract clearly contemplates the payment of street improvements in yearly installments, otherwise the last clause in this sentence would have no legal significance; so, it was the duty of the lessee to pay the installments falling due during the term of the lease. The lessor could not destroy this intention, and change the terms of the contract, by neglecting, intentionally or otherwise, to execute the agreement with the city, in order to extend the payment over a period of ten years. Therefore, all sums that would have fallen due after the expiration of the lease should be repaid by the lessor to the lessee with interest. This was not a voluntary payment in contemplation of law, for at the time the payment was made the agreement to extend was not executed by the landlord, and in law the payment was due, and was secured by a lien upon the property which could have been immediately enforced, thereby destroying the leasehold estate. The lessee had a right to remove this encumbrance, by paying the assessment, and protect his estate; if he had a legal reason for removing the encumbrance he will not be bound because he assigns as his reason that he anticipated taking the option and becoming the owner of the property before the end of the lease. This was not a permanent improvement contemplated as a consideration moving for the original lease. The decree for this item is affirmed.

Now, as for the gas stoves, the Chancellor was of the opinion that the stoves were placed in the apartment as a permanent improvement and the intention controls. The lessee concedes that this is the correct rule in reference to stoves placed in a building by the owner, but insists a different rule applies when stoves are placed in the building by the tenants. This is a correct statement of law in reference to landlord and tenant. Knoxville Gas Co. v. Kirby & Son, 161 Tenn., 490, 32 S. W. (2d) 1054. But as heretofore said, these stoves were placed in the building by the original lessee, as a part of the plan of the conversion and permanent improvements of the apartment. If it had not been the intention of the original lessee to part with his ownership by attaching them to the building, since they were detachable fixtures, the title remained in him and did not pass under his assignment of his interest in the lease to the defendant. The defendant cannot recover for conversion of property, the title of which is in another. The decree of the Chancellor in reference to the stoves is affirmed.

The cost of the appeal is divided ·equally between the parties, and the case is remanded. This court is not responsible for the delay in the preparation of the case in the court below, and it cannot assume the burden of stating an account arising upon these different items of damages. It is customary to submit the controlling facts to the court and after an adjudication to remand the case for a reference if necessary. The case would have taken this course in the lower court had the adjudication been different.

Snodgrass and Thompson, JJ., concur.