In re BELMONT INDUSTRIES, a partnership, Eldie NMN Ferrell, Treva McCluskey Ferrell, Bankrupts.

C. Kenneth STILL, Trustee, Plaintiff,

v.

CITY BANK & TRUST COMPANY, Defendant.

Bankruptcy Nos. BK-1-79-1154 to BK-1-79-1156.

United States Bankruptcy Court, E. D. Tennessee.

Dec. 11, 1979.

Kyle R. Weems, Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., for plaintiff.

Harold N. Roney, Camp & Roney, McMinnville, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The plaintiff in this proceeding is the trustee in bankruptcy in the cases of Eldie Ferrell, Treva Ferrell, and their partnership, Belmont Industries. The defendant, City Bank and Trust Company of McMinnville, Tennessee, is a creditor of the bankrupts.

In Eldie Ferrell's and Treva Ferrell's bankruptcies, the defendant filed a secured claim (No. 6 in each case) for $25,746.49 and interest. The trustee began this proceeding by filing a complaint objecting to the claim and asking that it be held unsecured. The trial was held on September 24, 1979.

The complaint alleged that the defendant failed to perfect its security interest because it filed its financing statement in the county when it should have filed it with the Secretary of State. The place of filing depends on whether or not the items of collateral in the security agreement and financing statement were "fixtures" for the purposes of Article 9 of the Uniform Commercial Code as enacted in Tennessee. Filing in the county (local filing) will perfect a security interest in fixtures. Tenn.Code Ann. §§ 47–9–302, 9–401(1) (Repl.Vol.1979).

The parties do not dispute that the office equipment—desks, chairs, typewriters, etc. —was not fixtures. As to it the defendant's security interest is not perfected.

Though there are other questions about the adequacy of the defendant's security agreement and financing statement, much of this controversy can be disposed of by determining which of the other items of collateral were fixtures. With regard to that question the court finds the following facts.

The bankrupts were partners in a laundry and dry cleaning business in McMinnville, Tennessee. The items in which the defendant asserts a security interest were generally the equipment of that business. The list relied on by the defendant as a list of collateral breaks it down into three categories—office equipment, dry cleaning equipment, and laundry equipment. The only witness who testified about the equipment was H. L. Malloy who sold it to the bankrupts. Mr. Malloy was in the laundry and dry cleaning business for 50 years and operated at the Belmont Industries location from 1941 until he sold the business.

He testified that all of the dry cleaning equipment could be taken out without damage to the building. It would have to be disconnected from air or steam pipes and from electric outlets. One machine would have to be disassembled but it would not damage the building to remove the disassembled machine. Mr. Malloy's testimony about the laundry equipment was much the same. The machines would have to be disconnected from air, steam, and electrical outlets but could be removed without damage to the building, with one exception. Mr. Malloy testified that the boiler could be removed only by removing the doors and part of one end of the building; the building was built around the boiler. Finally, Mr. Malloy testified that the building could be used for other purposes if the laundry and dry cleaning equipment were removed.

Whether the items in question were fixtures is to be determined by Tennessee law other than the Uniform Commercial Code. Tenn.Code Ann. § 47–9–313(1). The definition of fixture is significant in this case only as the determinant of whether the defendant filed its financing statement in the correct place under § 47–9–401(1) of the Tennessee Code. Neither the plaintiff's nor

the defendant's interest in the goods derives from an interest in the real estate to which they are attached. The defendant asserts a security interest, and the plaintiff asserts a claim to the goods as a judgment lien creditor of the bankrupt under § 70c of the Bankruptcy Act. (11 U.S.C. § 110).

A comment on the law of fixtures in Tennessee appears at 42 Tenn.L.Rev. 354 (1975). The cases with which it is concerned generally involve one party whose claim depends on an interest in the real estate. Nevertheless, with some qualifications the cases reflect a consideration of interests relevant to cases like this.

The comment divides the cases into two groups, the second of which is more relevant to this case. It collects cases where the goods in question were conditionally owned, i. e., subject to a security interest. 42 Tenn.L.Rev. 354 at 355. Of particular interest are those cases where the conflict was between a real estate and a chattel mortgagee:

> Although the UCC does not expressly so provide, authorities agree that the body of state law to be applied in determining whether an annexed article is a fixture, and thus whether section 9–313 is applicable, is that dealing with the rights of realty and chattel mortgagees in an annexed article.

Comment, 42 Tenn.L.Rev. 354, 374–375 (1975).

As to what the Tennessee decisions reveal the comment goes on to say:

> A close, and hopefully fair, reading of the cases, however, suggest the following criteria for determining whether an article subject to an article 9 security interest will be denominated a fixture for purposes of applying section 9–313: (1) annexation to the realty, (2) intention that the article be permanently attached to the freehold, and (3) removal without substantial injury to the freehold.

42 Tenn.L.Rev. 354, 376 (1975).

### Annexation

■ Annexation is material in the first instance because an article cannot be a fixture at all if it is not annexed to realty.

Whether something is annexed depends on the degree of attachment.

> The degree to which the article must be fastened to the property depends on its size, weight, shape, and function. A heavy safe may meet the annexation test due to the fact of gravity alone. Equipment specially made for a particular building usually requires only a slight degree of attachment to be considered annexed. Generally, however, annexation requires attachment to the real property by bolts, nails, cement or the like.

42 Tenn.L.Rev. 354, 359 (1975).

■ Usually the attachment is such that the items in question may or may not be fixtures, and the degree of attachment is only one factor to be considered. Compare *Lenoir Land Co. v. Haynes Heating Co.*, 166 Tenn. 494, 63 S.W.2d 659 (1933) and *Knoxville Gas Co. v. W. I. Kirby & Sons*, 161 Tenn. 490, 32 S.W.2d 1054 (1930). Thus the annexation test is usually a threshold test. The court need only find that the items do not fall in the category of those clearly not fixtures. In this case the threshold has been crossed. The laundry and dry cleaning equipment was attached to steam and air pipes and to electrical outlets. It cannot be moved without some effort in disconnecting it. It cannot be said to be clearly not fixtures. In that sense the machines were annexed to the realty.

### Intention

Intention is a misleading term in defining the test used by the courts.

> In reality, the courts have viewed the annexation from the perspective of an innocent realty mortgagee. If that party could have relied on the article being included in his mortgage on the real estate, the requisite intention will be found. The criterion of intent thus involves an objective determination of a realty mortgagee's expectation that an article was intended to be a permanent annexation to the realty.

42 Tenn.L.Rev. 354, 377 (1975).

The court in *In re Kann*, 6 U.C.C.Rep. Serv. 622, at 630 (Bankr.Dec., E.D.Pa.1969) described intention as follows:

In speaking of intention . . . we are not concerned with a state of mind, nor with an expressed intention, but with apparent intention inferred from all the facts and circumstances surrounding the installation of the tangible property upon the realty. This consideration includes the relationship of the parties, the nature of the article and the mode of its attachment or annexation.

In this case the machines, except the boiler, were not affixed to the building in any substantial way. They could be disconnected from the air and steam pipes and electrical outlets without damage to the machines or the plumbing. Disconnecting and moving the machines would not cause any significant damage to the building.

The building itself is useable for purposes other than as a laundry and dry cleaning business. It has been so used for many years and has the necessary plumbing but is nevertheless not so peculiarly adapted that it cannot be used for other purposes.

Between the bankrupts and the owner of the realty there could be no dispute as to rights in the machinery. The bankrupts bought the machines from the owner of the realty and leased the building from him. He certainly could not claim the machines as part of the realty. See *Hart v. Appalachian Washed Coal Co.*, 139 Tenn. 204, 201 S.W. 515 (1917).

Any mortgagee of the realty who made slight inquiry should have learned of the relationship of the bankrupts and the owner of the realty as to the machines. The defendant in this case knew or had reason to know that the bankrupts bought the machines from the owner of the realty and rented the business premises.

This case is similar to *In re Regency Furniture, Inc.*, 7 U.C.C.Rep.Serv. 1384 at 1386 (Bankr.Dec., E.D.Tenn.1970), where the machinery was described as follows:

These goods are machines weighing from 50 pounds to 6,000 pounds each and used in the manufacture of bedroom furniture. Most are connected to electrical outlets and, in addition, some are connected to a dust collection system. The machines include air compressors, sanders, presses, printing machines, saws, routers, drill presses, grinders, shapers, sprayers, motors, clamping machines, and glue spreading machines . . .

The court held that the machines were not fixtures. The court was not convinced otherwise by the argument that the machines were necessary to the operation of the business. It said that nevertheless the machines were not essential to the completeness of the structure or its use and did not become real estate merely because they were necessary for the conduct of operations on the premises. See *In re Park Corrugated Box Corp.*, 249 F.Supp. 56, 3 U.C.C. Rep.Serv. 23 (D.N.J.1966) (applying New Jersey's "institutional" doctrine).

Among the Tennessee cases there are some that appear to be to the contrary. In *Union Bank & Trust Company v. Fred W. Wolf Company*, 114 Tenn. 255, 86 S.W. 310 (1905) the court was primarily concerned with notice; no notice of the conditional sale was given. The court said:

Now, in the present case, it appears that the machinery was so placed in the factory as to be *prima facie* a part of the realty itself, *and the whole erection, composed of the building and machinery, was in the possession of the owner of the land.* The [mortgagees] were justified from the appearance of things in assuming that the machinery was in truth part of the land, and in taking such machinery into estimation in determining the amount of money which they would advance upon the entire property. [emphasis added]

114 Tenn. 255, 267, 86 S.W. 310, 312 (1905).

The facts of *W. J. Savage & Co. v. Mayfield*, 157 Tenn. 676, 11 S.W.2d 855 (1928), were distinctive. Mayfield sold a factory—a leasehold, buildings, equipment and machinery—and was given a mortgage to secure the balance of the purchase price. The mortgage covered after-acquired machinery. The debtor thereafter bought an air compressor to which the seller retained title. On default, Mayfield bought the factory at the foreclosure sale without notice

of the conditional sale of the compressor. The court held that Mayfield as a subsequent purchaser without notice had the superior right to the compressor.[1]

In the *Union Bank & Trust* case the facts were more likely than in this case to lead a mortgagee to believe the articles were a permanent improvement to the realty. In this case the machines were in the possession of a lessee of the premises who had purchased the machines from the lessor. In the *W. J. Savage & Co.* case, though the machines were apparently in the possession of a lessee, Mayfield's rights depended on his being a subsequent purchaser not on his being a mortgagee. As a purchaser he reasonably expected that the machines would be part of the realty that he purchased. See also *Knoxville Gas Co. v. W. J. Kirby & Sons,* supra.

Also, in the pre-U.C.C. cases the courts were not concerned with defining fixture; they were establishing priorities, often dependent on who could have given notice. Comment, 45 Tenn.L.Rev. 354, 371–372, 375–76 (1975). Now, both the methods of giving notice and the priorities are set by Article 9 of the U.C.C. The pre-U.C.C. cases are relevant only as indicators of what the courts have thought realty purchasers or mortgagees should reasonably expect to be included as part of the realty.

In that regard, many of the Tennessee cases were decided more than a few years ago, and since then reasonable expectations may have changed. The court is not unaware that security interests are granted in a great variety of things that cannot be easily detached and are not obviously separable from the realty to which they are affixed.

In *In re Kann,* supra, the court held that a walk-in refrigerator was not a fixture. In *In re Park Corrugated Box Corp.,* supra, the court held that a machine—"125 inches wide by 8 feet long, weighing 45,000 pounds"—was not a fixture. In *In re Col-*

*lier,* 3 U.C.C.Rep.Serv. 1076 (Bankr.Dec., E.D.Tenn.1966), the court held that an oil-fired boiler installed in a dry-cleaning business was not a fixture.

■ In determining what is a fixture for the purpose of deciding where to file a U.C.C. financing statement, business lenders should be held to a standard based on current business practices and experiences. Realty mortgagees' expectations as to what items are included in the realty must take account of the probability that someone has a security interest in the business's equipment, be it ever so large, and intends to take it if there is a default.[2]

Because of the possible combinations of factors, "the determination [of what is a fixture] can only be made from a consideration of all the individual facts and circumstances attending the particular cases." 35 Am.Jur.2d, Fixtures § 1 at 700 (1967). On the whole the court concludes that the manifest intention was that the machines, except the boiler, not be a permanent improvement to the realty.

### Removal

■ Generally, an article annexed to realty will be held to be a fixture if it cannot be removed without material physical injury to the freehold. "In cases involving conditionally owned articles, however, the courts demonstrated wide latitude in establishing the extent of damage allowable under the material injury test." Comment 42 Tenn.L.Rev. 354, 378 (1975). In this case there is little problem with this test. Except for the boiler, the machines may be removed without substantial damage to the building and the building will be useable for other purposes.

### Fixtures—Conclusion

As to all of the items in question, except the boiler, the court concludes that they were not fixtures. As to the boiler the court concludes that it was a fixture. The

---

1. Under U.C.C. § 9–313(2) and (4) a prior encumbrancer who purchases at foreclosure is not treated as a subsequent purchaser.

2. The court should point out that though U.C.C. § 9–313 does not define fixtures, subsection (5) allows removal of fixtures except goods incorporated into a structure.

**613**

building was built around it and removal would not be easy. It was so affixed to the building that, despite its belonging to the lessees, a realty mortgagee could reasonably expect it to be included as part of the realty. The boiler in *In re Collier*, supra, was not built into the building as was the boiler in this case. It merely rested on the floor, and was not fastened to it, and could be removed without damage to the building. The ultimate removability of the boiler in this case does not mean that it was not a fixture. See footnote 2, supra.

To perfect a security interest in business equipment, a creditor that files its financing statement locally only is hazarding a decision in a confusing area of the law. A court or other creditors may disagree. Except in clear cases the only true protection is to file locally *and* centrally.

### The Boiler

■ The trustee questioned the effectiveness of the defendant's security agreement and financing statement to create and perfect a security interest in the boiler as a fixture. The trustee first questioned the description of the collateral in the security agreements and the financing statement. There might be some question about the adequacy of the description by itself, but in this case there was attached to the security agreements and the financing statement an itemized list that included the boiler. As to the financing statement, the attached list makes it sufficient to serve its purpose of giving notice of a security interest in the boiler. Official Comment 2 to U.C.C. § 9–402. Anyone searching the records who found the financing statement would find the attached list.

As to the security agreements, the trustee pointed out that they do not refer to the attached lists. Both security agreements were forms used by the defendant. In neither form is there a printed reference to any attachments. Of course, the typed description could have referred to the attached lists. The court, however, hesitates to impose a requirement that security agreements must specifically incorporate by reference any attached lists of collateral. Form security agreements are no doubt used by bank personnel who are unacquainted with the niceties of the law of contracts and to whom physical attachment of a list adequately signifies its incorporation into the security agreement. In this case the security agreements were executed contemporaneously with the sale of the equipment to the bankrupts. The sale agreement as evidenced by the memorandum of sale and the bill of sale, used the same list, handwritten rather than typed. The court thinks that there could be no mistake that the attached list was part of the contract, the security agreement. See *Springfield Tobacco Redryers Corporation v. City of Springfield*, 41 Tenn.App. 254, 293 S.W.2d 189 (1956); *Restatement of Contracts* § 208 (1932). The court therefore finds that the description of the collateral in the security agreements and the financing statement was sufficient to meet the requirements of §§ 9–203(1)(b), 9–402(1) and 9–110 of the U.C.C.

■ The trustee also questioned the sufficiency of the description of the real estate in the financing statement. Section 9–402 requires that to perfect a security interest in fixtures the financing statement must also contain a description of the real estate to which they are or are to be attached.[3] The financing statement described the real estate as Belmont Laundry and Cleaners located on North Spring Street in McMinnville, Tennessee. Apparently there could be no question about the description if the street number had been included. Cf. *Home Savings Association v. Southern Union Gas Company*, 486 S.W.2d 386, 11 U.C.C. Rep.Serv. 639 (Tex.Civ.App.1972) (reh. den.). The court is of the opinion that the description is sufficient even without the street number. As to real estate also, the purpose of the description in the financing statement is to give notice. The description need only "make possible the identification of the thing described". Official Comment

---

**3.** Section 9–203(1)(b) does not require a description of the realty in the security agreement when it creates a security interest in goods that are or are to become fixtures.

to U.C.C. § 9–110. A person finding the financing statement in the register's office may make further inquiry of the owner of the real estate in order to be certain what real property is meant. § 47–9–408, Tenn. Code Ann. (Repl.Vol. 1979) (indexing in record owner's name). The court concludes that as to the boiler the defendant perfected its security interest in it as a fixture by filing its financing statement in the registry of real estate deeds.

### Conclusion

Under § 70c of the Bankruptcy Act the trustee became a judgment lien creditor, as of the date of bankruptcy, without notice of any prior security interests in the equipment. 4B Collier on Bankruptcy ¶ 70.49 (14th ed. 1967). Except for the boiler, the defendant failed to perfect its security interest in the equipment because it filed its financing statement locally rather than with the Secretary of State. U.C.C. §§ 9–302, 9–303, 9–401. Under U.C.C. § 9–301(1)(b) the trustee's rights in that equipment and its proceeds are superior to the defendant's. *In re Regency Furniture, Inc.,* supra; *In re Collier,* supra.

The defendant perfected its security interest in the boiler; its rights to the boiler and its proceeds are superior to the trustee's.

The equipment, including the boiler, has been sold. The trustee is holding the proceeds. After this proceeding was begun, the defendant filed a secured claim in the Belmont Industries case based on its security interest in the equipment. The court will enter an order allowing the defendant's claims as secured to the value of the boiler and the balance unsecured.

This memorandum constitutes findings of fact and conclusions of law. Rule 752, Bankruptcy Rules.