In re BUBBA'S OF TENNESSEE, INC., Debtor.

C. Kenneth STILL, Trustee, Plaintiff,

v.

J.L. LESTER & SON, INC., Defendant.

Bankruptcy No. 1–80–01454.
Adv. No. 1–81–0069.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 21, 1984.

A. Alexander Taylor, II, Miller & Martin, Chattanooga, Tenn., for plaintiff.

Marson G. Dunaway, Jr., Rockmart, Ga. and William A. Dobson, Jr., Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

### Background

For a number of years Harold M. Lasater, Sr., operated several grocery stores in the Chattanooga area. Upon his death his wife became the Executrix of his estate. She sold three grocery stores to H.W. Smith, Ernest Whitfield and Alfred Hewatt. The debtor corporation, Bubba's of Tennessee, Inc., was formed to own and operate the grocery stores. The new business was not successful. An involuntary petition under chapter 11 of the Bankruptcy Code was filed against debtor corporation.

A trustee was appointed in the chapter 11 case. He employed attorneys and accountants and made every effort to reorganize the business.

The business was in disarray. The trustee had difficulty in obtaining books and records or other assets. He immediately sought the turnover of funds from several banks. It was necessary for the trustee to go to Snellville, Georgia in an effort to obtain books and records, and to seek an accounting from the principal officers of debtor corporation.

The debtor corporation was short of operating capital. The trustee, with the assistance of his attorney and accountants, procured short term financing in order to keep the grocery stores open.

The trustee also sought an order to be authorized to use cash collateral in the ordinary course of business and the proceeds of such cash collateral to be subject to any interests in the collateral.

The principal officers of the corporation did not file schedules and it was necessary

for the court to order them and the trustee to file schedules. The trustee took the depositions of Alfred Hewatt and Ernest L. Whitfield, who were the principals of the debtor corporation.* The trustee had to seek an order from the court requiring Ernest L. Whitfield and Alfred Hewatt to appear and show cause why they should not be held in contempt of court for failure to turnover assets.

It quickly became apparent to the trustee that the grocery store in Kimball, Tennessee needed to be liquidated. The trustee employed an auctioneer to sell the equipment in the store, but he moved the inventory of groceries to the other two stores in Chattanooga.

The trustee, through his attorneys, filed complaints and won large judgments against Alfred Hewatt and Ernest L. Whitfield in an effort to recover preferential transfers.

The trustee struggled for months trying to reorganize the business and to save the jobs of a number of employees. Finally he was exhausted and filed a motion for instructions with respect to continued operation of debtor's business. The trustee was allowed to continue operating the business but the matter was set for rehearing.

In an effort to recover assets of debtor the trustee commenced an adversary proceeding against Caroline T. Smith, widow of H.W. Smith, a deceased principal, to recover salary which he alleged was wrongfully paid to her. The case was settled for $12,000.00.

The trustee finally concluded that he was unable to continue operating the business. He filed an application to sell the inventory, fixtures, and equipment in the 23rd street store. The next month he filed an application to sell the inventory, fixtures and equipment of the Alton Park store.

All of the assets of debtor were sold and the trustee has a fund on hand. The purpose of the litigation before the court is to determine if there is a lien on the fund.

Four allegedly "secured" claims were filed against the bankruptcy estate. They were: Claim no. 40, in the amount of $164,507.92, by the Estate of H.M. Lasater, Sr., Geraldine F. Lasater, Executrix; Claim no. 68, in the amount of $125,221.87, by J.L. Lester & Sons, Inc.; Claim no. 77, in the amount of $122,682.36, by Carolyn Teese Smith, Administratrix of the Estate of H.W. Smith; and Claim no. 79, in the amount of $66,180.71 by Super Valu Stores, Inc. The alleged liens exceeded the amount of the total fund on hand.

Upon advice of counsel the trustee filed this complaint to determine the extent, nature, validity and priority of each lien asserted.

The trustee prayed:

1. That process issue and be served on each of the defendants, requiring them to answer or otherwise plead in the time and manner required by law.

2. That the Court find that the defendant, Super-Valu Stores, Inc., has a valid lien on the inventory of the debtor to the extent of Fifteen Thousand Dollars and No/100 ($15,000.00), and declare the balance of Super-Valu's claim to be unsecured, pursuant to T.C.A. § 67–4102, Item S(b).

3. That the Court determine the nature, extent and priority of the lien of the defendant, J.L. Lester & Son, Inc., on the debtor's fixtures located in Marion and Hamilton Counties, and declare that Lester be unsecured as to any liens on the inventory of the debtor, for failure to comply with T.C.A. § 47–9–401.

4. That the Court determine the nature, extent and priority of the secured position of the defendant, Caroline T. Smith, administratrix of the H.W. Smith estate, as assignee of certain pro-rata interests of the defendant Lester in Property of the debtor.

5. That the court determine the nature, extent and priority of the lien of the defendant, Geraldine F. Lasater, administratrix of the H.M. Lasater estate, on the debtor's fixtures located in Marion and

* H.W. Smith had died.

Hamilton Counties, and declare that Lasater be unsecured as to any interest in the inventory, machinery, equipment and accounts receivable of the debtor, pursuant to T.C.A. § 47–9–402(1), or alternatively, pursuant to 11 U.S.C. § 547.

Some months after commencing the adversary proceeding the trustee filed an application to approve a settlement of the lawsuit.

The trustee filed a memorandum in support of the settlement and alleged:

Following the filing of answers to the complaint by all four defendants, settlement negotiations were initiated to attempt to compromise the dispute among the parties, and various meetings were held where settlement proposals were discussed. Finally, on May 21, 1981, a meeting was held in Chattanooga with attorneys for all parties to the litigation being present. At that meeting, a firm settlement proposal was made by the attorney for the Trustee, and counsel for the four defendants promised to take this offer back to their clients and seek approval of the same.

Following the May 21st meeting, counsel for defendants, Super-Valu Stores, Inc. and Caroline T. Smith, administratrix of the H.W. Smith Estate, quickly informed Trustee's counsel that the proposed settlement was acceptable to their clients. Some time after this, the attorney for Geraldine F. Lasater, administratrix of the H.M. Lasater Estate, assented to the settlement upon his client's advice and so informed the Trustee's attorney.

At the May 21st meeting, Marson Dunaway, attorney for J.L. Lester & Son, Inc., informed those in attendance that he wanted to research the law of Tennessee on the nature and validity of his client's security interest in certain assets of the debtor, and that based upon his research he would make a recommendation to this client on whether or not to accept the proposed settlement. Some weeks after this meeting, counsel for the Trustee began making efforts to contact Mr. Dunaway by telephone, and was finally able to reach him. During this conversation, Mr. Dunaway expressed his opinion that if his client accepted the proposed offer, it might result in the discharge from liability of the H.W. Smith Estate on certain liabilities of the debtor to J.L. Lester & Son, Inc., which had been guaranteed by the Smith Estate. Counsel for the Trustee informed Mr. Dunaway that he believed this concern could be satisfied and should not be permitted to totally spoil the settlement, and promised to contact Mr. A.L. Mullins, attorney for the Smith Estate. Trustee's counsel did contact Mr. Mullins, and informed him of Mr. Dunaway's concern with the proposed settlement. Mr. Mullins assured the Trustee's attorney that he would agree with Mr. Dunaway that the acceptance of the settlement in the instant case would not be raised as a ground for discharging the Smith Estate for any liability it may have to Mr. Dunaway's client, J.L. Lester & Son, Inc. The Trustee's attorney asked Mr. Mullins if he would contact Mr. Dunaway directly and make the same assurance to him, and Mr. Mullins stated that he would do so.

A few days after Mr. Mullins' conversation with the Trustee's attorney, the Trustee's attorney once again contacted Mr. Dunaway and asked him if he would accept the proposed settlement. Mr. Dunaway advised that he had talked to Mr. Mullins and that he had researched Tennessee law on the validity of his client's security interest in property of the debtor, and based upon these events he would accept the settlement as it had been originally proposed.

On July 24, 1981, following Mr. Dunaway's oral acceptance of the settlement which had been proposed at the May 21st meeting, a letter was sent to attorneys of record for all parties to the lawsuit, attaching a copy of a proposed application of settlement. A copy of this letter is attached hereto as *Exhibit A*. In this letter, counsel for the Trustee asked all attorneys to review the settlement document and advise him by July 29 if the

settlement agreement was not satisfactory. By July 29, Trustee's counsel had not heard from Mr. Dunaway or any other of the attorneys involved, and accordingly on that date filed the settlement application. On July 30, 1981, counsel for the Trustee received a letter from Mr. Dunaway dated July 27, 1981 and postmarked July 28, 1981 informing him that he would not accept the proposed settlement, but instead made alternative demands for settlement.

After notice and hearing the court approved the settlement as to all parties except J.L. Lester & Son, Inc. The order provided:

> Following argument of counsel for the Trustee in support of the settlement, the Trustee, pursuant to Rule 68, Federal Rules of Civil Procedure, offered judgment to the defendant, J.L. Lester & Son, Inc., in the amount said defendant was to receive under the settlement application, $2,500.00. Said offer of judgment was rejected by J.L. Lester & Son, Inc., and the Court accordingly severed this portion of the adversary proceeding from the rest of the case and ORDERED that the Trustee's complaint against said defendant be set for trial on October 30, 1981 at 9:30 a.m. It was FURTHER ORDERED by the Court that the provisions of Rule 68, Federal Rules of Civil Procedure, concerning payment of costs shall be invoked if J.L. Lester & Son, Inc. shall recover less than the $2,500.00 offer of judgment made by the Trustee.

>     \*    \*    \*    \*    \*    \*

> The approval of this settlement shall be without prejudice to defendant, J.L. Lester & Son, Inc. to litigate its dispute with the Trustee, pursuant to the provisions set forth above.

If the defendant, J.L. Lester & Son, has a validly perfected security interest, which has priority over other creditors, in all or part of the items sold by the trustee, then J.L. Lester's lien would attach to the proceeds of each item sold.

### Findings of Fact

There is attached to trustee's adversary proceeding "collective exhibit C" which consists of three security agreements wherein the defendant, J.L. Lester & Son, Inc., is granted a security interest in:

> "All of the trade fixtures, furniture, equipment and stock of goods, wares & merchandise in bulk but changing in specifics located in maker's place of business ..."

Almost identical security agreements were given for the two stores in Chattanooga and the store located in Kimball, Tennessee.

"Collective Exhibit D" to the trustee's adversary proceeding consists of three U.C.C. Form 1, Financing Statements, which were filed in the county where each store is located.

The debtor in each case is described as follows:

1. Whitfield, Ernest L. Jr. and H.W. Smith & Food Giant, Kimball, Tennessee & BUBBA'S OF TENN. INC., a corp. Kimball, Tenn.
2. Whitfield, Ernest L. and H.W. Smith & Food Giant Alton Park
   3719 Alton Park Blvd.
   Chattanooga, Tennessee

BUBBA'S OF TENN., INC. same address

3. Whitfield, Ernest L. Jr. and H.W. Smith & Food Giant
   23rd Street, 23rd Street,
   Chattanooga, Tennessee
   & BUBBA'S OF TENN., INC.
   same address

It is undisputed that no U.C.C. Form 1, Financing Statements, were ever filed with the Office of the Secretary of State of Tennessee.

The court finds that the defendant has no perfected lien on the debtor's inventory and equipment because it failed to properly perfect its security interest in accordance with T.C.A. § 47–9–401, which requires a financing statement to be filed with the Tennessee Secretary of State's

Office. Subsection (c) of § 47–9–401(1) provides for the central filing of financing statements covering equipment and inventory: "In all other cases, in the Office of the Secretary of State." Comment 4 to § 47–9–401 makes this clear:

> In a state which has adopted either the second or third alternative (second alternative adopted in Tennessee), central filing would be required when the collateral was any kind of goods except consumer goods, farm equipment or farm products (including crops); documents; chattel paper; and accounts, contract rights and general intangibles, unless related to a farm.

If a creditor's obligation is secured by inventory or equipment not used in a farming operation, the creditor must file the financing statement with the Secretary of State. A locally filed financing statement is not sufficient to perfect such an interest. The defendant does not have a perfected security interest in the debtor's inventory or equipment by filing locally with the Registers of Hamilton and Marion Counties, Tennessee.

■ Local filings are sufficient to perfect a security interest in the debtor's fixtures. In Tennessee, "fixtures" are narrowly defined. In order for collateral to be characterized as a fixture the goods must be so attached to the freehold so that their removal would cause substantial harm to the premises. *In re Belmont Industries*, 1 B.R. 608 (Bkrtcy.E.D.Tenn.1979).

> In the above case the court stated:
> Generally, an article annexed to realty will be held to be a fixture if it cannot be removed without material physical injury to the freehold ... In this case there is little problem with the test. Except for the boiler, the machines may be removed without substantial damage to the building and the building will be useable for other purposes. 1 B.R. 612.

In *Harry J. Welchel Co. v. King*, 610 S.W.2d 710 (Tenn.S.Ct.1981) the Supreme Court held that grain storage bins do not become fixtures when erected on real property.

In Tennessee only those chattels that are so attached to the freehold that, from the intention of the parties and the uses to which they are put, they are presumed to be permanently annexed, or a removal thereof would cause serious injury to the freehold.

610 S.W.2d 712 citing *Hechmon v. Booth*, 131 Tenn. 32, 173 S.W. 438 (1914).

■ In Tennessee two rules may be set forth as being determinative on the fixtures issue: (1) to perfect a security interest a secured party must file centrally if the collateral is characterized as a fixture; and (2) the collateral in question will be characterized as equipment unless its removal would cause substantial damage to the freehold and the parties intended such collateral to be permanently annexed to the freehold.

■ In the present case the trustee sold cash registers, check-out counters, meat counters, produce counters, frozen food counters, gondolas, grocery carts, meat cutters, grinders, steak tenderizing equipment, grocery shelves, freezer equipment and related personal property items found in a retail grocery store. The court finds that the items sold were equipment and not fixtures. In the testimony of James L. Lester, an officer in the defendant corporation, Mr. Lester was asked: "... in the practice of the trade when knowledgeable grocery people refer to fixtures in a contract, could you tell the court what that refers to in groceryman's language?"

Mr. Lester replied: "Well over the thirty-six years we have always said fixtures, equipment and furniture and that was something that could be moved."

The trustee's three witnesses who supervised the auctioning of the equipment, testified that all the equipment which was sold could be removed from the buildings in one day without damage to the freehold.

*Summary*

The court finds that because the defendant failed to make a central filing of each U.C.C.–1 financing statement, it is unse-

cured as to the debtor's inventory and equipment. Defendant would be secured as to any fixture because of its local filing, but the evidence presented at trial clearly demonstrates that there were no fixtures in the grocery stores sold by the trustee.

The creditor in this case is a wholesale grocery company which does most of its business in the State of Georgia. The creditor's lawyer is licensed to practice in Georgia.

At the trial, Jimmy Lester, secretary of the creditor company, was asked, "Do you know anything about a central filing in Tennessee?"

He replied, "No sir, we don't have them in Georgia so we filed here in the county."

Apparently, the creditor was never advised that Tennessee law regarding place of filing is different from Georgia. An examination of the record shows that had the creditor perfected its security interest by proper central filing, it would have prevailed over the other creditors.

In conclusion, the extent, nature and priority of creditor's asserted lien against property of the debtor's estate is, unfortunately, zero.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.

Following the trial of this cause the attorney for creditor filed a motion to reopen the trial. The motion will be dealt with by a separate memorandum and order.

## ON MOTION TO REOPEN

The trustee filed suit in this bankruptcy proceeding to determine the extent, nature, validity and priority of each lien asserted. Final orders of settlement were entered as to all lien claimants, except J.L. Lester & Son, Inc.

The court has just entered a memorandum and order finding that J.L. Lester & Son, Inc., has no validly perfected lien against property of the estate.

Following the trial, but before the court entered its memorandum and order, J.L.

Lester & Son, Inc., filed a motion asking among other things:

... for an order to reopen the trial in order for said defendant to place in evidence additional testimony and documents which were excluded by the court ...

In support of the motion, the defendant filed a brief with the following allegations:

1. Bubba's of Tenn., Inc. did not acquire the assets purportedly purchased from Mrs. Geraldine Lasater on November 27, 1979 because there was no compliance with the Bulk Sales provisions of the UCC, and there was no compliance with the order of Chancery Court of Hamilton County, Tenn. which purportedly approved the sale to Bubba's of Tenn., Inc. Therefore, although Lester's financing statements were not filed in the places required by Tennessee law still Lester was a secured creditor of the H.M. Lasater estate, the secured status and agreement were specifically known to Bubba's of Tenn., Inc. and Bubba's took no title or interest in the property which is the subject of this litigation superior to Lester's claims.

2. The conveyance from Mrs. Lasater to Bubba's was the product and result of fraud on the part of Bubba's and Mrs. Lasater.

Movant shows that although the management contracts between the Lasater estate and Smith, Whitfield and Hewatt and the petition for and order of court and bills of sale approving and consummating the sale were allowed in evidence by the court, still Lester was entitled to examine Mrs. Lasater as to whether, and the manner in which, the provisions of the agreement and order were or were not carried out.

Wherefore, movant shows that the evidence required and tendered by Lester on the issues were erroneously cut short and that the court does not have before it the evidence required to make a legal ruling on the issues, and the motion to reopen the evidence should be sustained.

Lester argued that Whitfield and Smith were acting as agents of Mrs. Lasater when they executed the security agreements and as a result Lester acquired a security interest in the store furnishings and old inventory as property of the Lasater estate. Lester then argues that the store furnishings and old inventory remained subject to the claims of the Lasater estate's creditors because the property was not sold in accordance with the bulk sales law. Since Mrs. Lasater sold the property as executrix of her husband's estate and subject to court approval, the bulk sales law did not apply. Tenn.Code Ann. § 47–6–103(4).

Contrary to Lester's argument, the agreement approved by the chancery court did not require compliance with the bulk sales law. It allowed the parties to agree on an "appropriate method of compliance" and in the circumstances no compliance was the appropriate method. Furthermore, failure to abide by the sales agreement would be a breach of contract that Mrs. Lasater might pursue but would not necessarily give her any interest that Lester's purported security interest might attach to.

The trustee did not deny that Lester had a security interest or that it would have had priority over the trustee's rights if it had been perfected. The trustee simply argued that Lester's security interest was unperfected and subordinate to his rights as a judgment lien creditor without knowledge of Lester's interest. 11 U.S.C. § 544; Tenn.Code Ann. § 47–9–301(1)(b). No fraud by Mrs. Lasater, by the debtor, or by the debtor's principals deprived Lester of a security interest with priority over the trustee's rights. Lester lost that priority because of its own negligence in failing to determine the Tennessee law and file financing statements as required by it.

The question of priority between Lester and any parties other than the trustee and the question of whether fraud affected Lester's priority as to those other parties are irrelevant.

Finally, even if fraud causes a creditor to have an unperfected security interest, that does not mean the security interest will be treated as perfected against the lien of a judgment creditor who has no knowledge of the security interest. See *Chattanooga Brick & Tile, Inc. v. Agnew*, 18 U.C.C.Rep. 1063 (Tenn.App.1976); *In re Jerome*, 31 B.R. 266, 37 U.C.C.Rep. 331 (Bankr.D.Vt. 1983).

The evidence excluded by the court was irrelevant to the questions at hand and was properly excluded. The motion to reopen the proof is therefore denied.